## DESHA, SHEPPARD & CO. v. POPE & SON.

1. A mere agreement to ship goods in satisfaction of antecedent advances, will not, in general, give the factor or consignee a lien upon them for his general balance until they come to his actual possession; but if there is a specific pledge or appropriation of certain ascertained goods, with the intention that they shall be a security, or the proceeds as a payment, and they are deposited with a bailee; then the property is changed and vests in the individual to whom they are to be delivered.

WRIT of error to the Circuit Court of Mobile county.

Claim of property, by Desha, Sheppard & Co., to 18 bales of

cotton, levied on by the sheriff of Mobile county, by virtue of an execution in favor of Pope & Son, against W. J. Alexander.

At the trial it appeared, that the execution under which the levy was made, came to the sheriff's hands on the 20th day of December, 1841, and was levied the day afterwards. The cotton levied on, had previously been secured in a warehouse in Montgomery, where it was stored in the name of Alexander; by his order it was shipped, by the warehouse keeper at Montgomery, on the 18th December, 1841, on board the steamboat W. W. Fry, consigned to Desha, Sheppard & Co. for account of Alexander. The claimants then proved, they were the commission merchants or factors at Mobile, of Alexander, who was a planter in the interior of the State, that as such, they had previously made advances to him, under the promise that cotton should be shipped to them for the payment of such advances; and that at the time of the shipment, he owed them a much larger amount for such advances, than the value of the cotton. They also proved that the cotton in question had been shipped at Montgomery, by the warehouse keeper, under the directions of Alexander to them as factors, and expressly to pay them for such advances as far as it would go; that the bill of lading, in the form of a letter, was forwarded by the same boat, directed to them at Mobile.—They further proved that the steamboat, with the cotton, arrived at Mobile the 20th or 21st of December, and that at the moment she landed at the wharf, a clerk of their's went on board and received from the clerk of the steamboat, the bill of lading: that immediately afterwards, the cotton was delivered by the steamboat on the wharf to a public weigher, who received it for them, and by their authority. The claimants paid the freight to the master of the steamboat, and the cotton was so delivered and freight paid, before the sheriff levied on it. The plaintiffs were the owners and consignees of the boat.

Upon this proof, the court instructed the jury, that if they believed the execution came to the hands of the sheriff before the cotton or the bill of lading for it, came into the actual possession of the claimants, that the lien of the execution bound the cotton, and they should find for the plaintiffs.

The claimants requested the court to charge the jury, that if they believed the cotton was shipped by Alexander at Montgomery, on the 18th December, 1841, and consigned to them as factors,

for the payment of advances by them made, and that the bill of lading for the cotton was also delivered on the boat at that time by Alexander, or by his directions, to be delivered to them and addressed to them, that such delivery of the cotton and bill of lading to the carriers was a constructive delivery to the claimants as of the date of the shipment; and the lien of the execution would not overreach the lien of the claimants. This was refused, and the jury was instructed, that the lien of the claimants as against the execution creditor, would only commence at the time of delivery to them in Moble. The clamants excepted to the charges given, as well as the refusal to charge as requested.

A verdict was returned for the plaintiffs, assessing the value of the cotton at 650 dollars. Upon which a judgment was rendered, that the plaintiffs should recover that sum of the claimants, and certain other persons as their sureties on the bond given by them for the trial of the right of property.

At the ensuing term, this judgment was vacated, and the proper one entered upon motion of the plaintiffs.

The charge given, and that refused, is now assigned as error, as is also the vacating of the irregular judgment, and the entering of the proper one at a subsequent term.

STEWART, for the plaintiffs in error, insisted that the rights of the claimants over the cotton attached as soon as it was shipped, and the bill of lading directed to them, delivered on the boat.—— [2 Hill, 147, 137 ; Cross on Liens, 252–3; 1 B. & P. 563; 1 East, 506; 2 Bingh. 20; 12 Pick. 314; 15 Mas. 528; 24 Wend, 169.]

The entry of the judgment was the consideration of the court, and therefore, not the subject of amendment. It cannot be considered as a clerical error.

CAMPBELL, contra—insisted that the current of authority establishes that a shipment of goods to be carried to a distance to a consignee, vests the property in him.

1. When the shipment is made, in pursuance of a previous order, applicable to the specific shipment, at the risk of the consignee, and when the bills of lading are taken to him.

2. When the shipment has been made for a specific object, in which the consignee is interested by contract, and the bills of la-

ding, duly executed to the consignee, have been sent forward and received before the adverse lien attaches.

3. But the property does not vest *until possession by the consignee* when shipment is made without any previous order referring to the specific consignment: if the consignment is on account of the shipper, and where the bills of lading have not been received. [21 Pick. 321; 39 E. C. L. R. 261; 3 D. & E. 119; 8 Cranch, 335, 419; 1 Exch. Rep. 422; 2 Wash. C. C. 403; 5 M. & S. 350; 7 Taunt. 169; 2 Hill, 147; 17 Mass. 197; 1 Peters, 445; 4 East, 241; 1 John. 215; 2 East, 235.]

GOLDTHWAITE, J.—If the claimants of the cotton levied on in this case, stood in the relation of factors only, it is clear upon principle, that their lien for the balance due them, could not attach until the cotton was in their actual possession. [Kenlach v. Craig, 3 Term Rep. 119; Bruce v. Wait, 3 Mee. & W. 15; cited Cross on Liens, 254.] The reason for this is, that they have no property in the goods by the mere act of shipment, although they are named in the bills of lading as the consignees. By itself, the bill of lading does not operate as a transfer of the goods; but is rather to be considered as evidence, or as an act raising the presumption, of such a transfer. [Abbot on Ship. 375; Cox. v. Harden, 4 East, 211; Haille v. Smith, 1 B. & P. 363.]

But it appears from the evidence set out in the bill of exceptions, that, independent of the relation between the claimants as factors, and Alexander, the defendant in execution, the cotton was shipped *expressly* to pay them, so far as its proceeds would go, for advances previously made by them; and the bill of lading was transmitted to them. Under these circumstances, the shipment must be considered as a specific appropriation of the cotton for the security of the claimants. This appropriation did not rest in intention merely, for it was executed, so far as the defendant in execution was concerned, by the transmission of the bill of lading to the consignees. The debtor could have made an assignment, or other valid transfer of the title to this cotton, for the security of the claimants at any time, before the lien of the plaintiff's execution attached, and there is no sound reason which should prevent the bill of lading from producing the same effect after its transmission, and when the shipment was expressly made for this purpose. This is the effect of the cases of Haille v. Smith, [1 B. & P. 563,]

and Anderson v. Clark, [2 Bing. 20,] as well as that of Grosvenor v. Phillips, [2 Hill, N. Y. 147.] Nor is this principle contradicted in any of the cases cited by the counsel for the plaintiffs; indeed, in some of them, it is expressly conceded. [Kenlach v. Craig, 3 Term Rep. 119; Mitchell v. Ede, 11 A. & E. 888; Nichols v. Clent, 3 Price, 547.]

Although in theory, the principle stated is perfectly obvious, there may be some difficulty in applying it to the facts of some cases; we shall, therefore, endeavor to state it so that it cannot be misunderstood. The mere agreement to ship goods in satisfaction of anticedent advances, will not, in general, give the factor or consignee a lien upon them, for his general balance, until they come to his actual possession; but if there is a specific pledge or appropriation of certain ascertained goods, accompanied with the intention that they shall be a security, or the prooceeds as a payment, and they are deposited with a bailee, then the property is changed, and vests in the individual to whom they are to be delivered by the depository. [Cross on Liens, 253.]

The result of our opinion is, that the circuit court erred in refusing to give the charge requested by the claimants; the judgment is, therefore, reversed, and the cause remanded.