## Case No. 10,124.

NESMITH et al. v. DYEING, BLEACHING, & CALENDERING CO.

[1 Curt. 130; [1] 1 Am. Law Reg. 82.]

Circuit Court. D. Rhode Island. June Term, 1852.

FACTORS—ACCEPTANCE OF BILL DRAWN AGAINST PARTICULAR GOODS—EFFECT.

1. A factor who accepts a bill, drawn against a particular consignment of merchandise, which has been so far executed as to be placed in the hands of a third person, to be delivered to him, acquires thereby a property in the goods, which will enable him to maintain replevin against an attaching creditor of the consignor, to whom the officer making the attachment had delivered the goods.

  [Cited in Keene v. Wheatley, Case No. 7,644. Cited in brief in Halliday v. Hamilton, 11 Wall. (78 U. S.) 564.]
  [Cited in First Nat. Bank v. McAndrews, 5 Mont. 325, 5 Pac. 881.]

2. No bill of lading, or other formal document, is necessary to create the title in such case. nor is it necessary that the depositary should have been originally employed by the consignee, nor that he should know the particulars of the consignee's title.

This was an action of replevin, for a quantity of cotton cloth. It appeared that Daggett & Co., manufacturers, at Attleborough, in the state of Massachusetts, who had been in the habit of employing the plaintiffs [John P. Nesmith and others] as their factors in the city of New York, wrote to them on the 4th of February, 1852, that they had that day delivered 500 pieces of cloth to the defendants, to be colored into cambrics, and had directed them to insure the goods, and send the plaintiffs a policy, with a receipt for the goods, and requesting the plaintiffs to accept a bill which they had drawn on them at six months date. They also desired the plaintiffs to order the colors of the cloths. On the same day, Daggett & Co. wrote to the defendants, at Providence, R. I., advising them of the despatch to them, by railroad, of 300 pieces of cloth, to be made by the defendants into cambrics for the plaintiffs, and to be forwarded to the plaintiffs when finished. They added, that they should send 200 pieces more on that day, and desired the defendants to send to the plaintiffs that afternoon a receipt for 500 pieces, together with evidence that they were insured for the plaintiffs' account; and they informed the defendants that the plaintiffs would order the colors. On the 5th of February the defendants wrote to the plaintiffs that they had received 500 pieces of cloth from Daggett & Co. to color, &c., for cambrics, and had, at their request, effected insurance thereon, payable, in case of loss. to the plaintiffs; and they applied for and obtained this insurance "for and on account of the plaintiffs, loss, if any, to be paid to them." On the 6th of February, the plaintiffs wrote to Daggett & Co., acknowledging the receipt of their letter of the 4th of February, and saying, they suppose the cloths are of the same quality as others they have sold, and if so, they will accept the draft; and on the same day they wrote to the defendants, acknowledging the receipt of their letter of the 5th of February, and ordering the colors and mode of packing the cambrics. On the 13th of February, the bill was presented to the plaintiffs for acceptance, and was by them accepted, it having been previously negotiated by Daggett & Co. On the 10th of March, Daggett & Co. having failed in business, the defendants caused these goods to be attached, as security for a debt which Daggett & Co. owed them; the goods were not then completely finished, and the attaching officer delivered them to the defendants. It was agreed that upon these facts the court should determine whether the plaintiffs can maintain their action.

Mr. Cozens, for plaintiff.
Carpenter & Hoppin, for defendants.

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

CURTIS, Circuit Justice. The question is whether the plaintiffs, at the time the attachment was made, had a property in these goods, which would enable them to maintain replevin, against one holding them under an attachment as the property of Daggett & Co. The facts show that the parties intended to vest in the plaintiffs an interest in these goods, as security for the reimbursement of the money, which, by their acceptance they engaged to pay for Daggett & Co. Independently of any particular expressions occurring in the correspondence, such an intention is fairly inferable from the very nature of the transaction. A request made by a principal to a factor to accept a bill, because the principal has placed merchandise in the hands of a third person, to be insured for the benefit of the factor, and forwarded to him for sale, carries with it an implication that the parties intend that the factor, if he accepts, may look to the goods for his reimbursement; and if this implication is not controlled, it is sufficient, so far as the mere intention of the parties can govern, to confer on the factor a corresponding interest in the goods. In the case at bar, this intent, derivable from the nature of the transaction, is not controlled, but is much strengthened by the language of the correspondence. When Daggett & Co. sent the cloths to the defendants, they informed them that they were to be made into cambrics for the plaintiffs, and forwarded to them; that they were to be insured for the plaintiffs' account, and they requested the defendants to send to the plaintiffs evidence that the goods had been thus received and insured. This was accordingly done, and the bill was accepted because it was done. Now, although it is clear that a mere intent of a consignor to vest a special property in his factor, to secure him for an advance on account of a particular consignment, even if the advance is made on the faith of it, will not create any legal property in the factor, yet it is otherwise when the particular goods have been set apart, in the hands of a third person, who has undertaken to deliver them to the consignee, and the latter has advanced, or accepted, upon the faith of such an arrangement. The decisions of the supreme court of the United States in Gibson v. Stevens, 8 How. [49 U. S.] 384, and Grove v. Gilmor, Id. 429, and of the court of exchequer in Bryans v. Nix, 4 Mees. & W. 775, and of the supreme court of New York in Holbrook v. Wight, 24 Wend. 169, and Grosvenor v. Phillips, 2 Hill, 147, fully support this position, as does also Sumner v. Hamlet, 12 Pick. 76.

It was attempted to distinguish some of these cases from the one now under consideration, because the parties had both agreed that the depositary should act as the plaintiffs' agent; but I consider that in this case, although Daggett & Co. originally employed the defendants, and were to pay them for finishing the goods, yet when the plaintiffs were apprised that the defendants held the goods for them and assented thereto, and when the defendants were informed that the goods were to be finished for and sent to the plaintiffs, and by accepting the goods for these purposes gave their assent to execute them, all parties, including the defendants, agreed that the defendants should act as the plaintiffs' agents so far as respected the custody for, and delivery to, the plaintiffs of these goods. It is true the defendants did not know why the goods were to be delivered to the plaintiffs. The information given to them by Daggett & Co., when the goods were sent, that they were to be finished for and sent to the plaintiffs, and insured for their account, would rather indicate that the plaintiffs were the absolute purchasers. But this is not material. It is not necessary that they should know the inducement which led to the arrangement, or the particulars of the plaintiffs' title. They knew what they had themselves agreed to do, which was in effect to hold the goods for the plaintiffs, and this was sufficient. I know of no principle, or decision, which requires more; and in none of the cases referred to above, except the one in 12 Pickering, was notice to the depositary of the nature of the title of the creditor, an element in the decision. If the depositary undertakes to act for a third person, and receives the property under such an undertaking, he must execute it, unless prevented by process of law founded on a superior title, and it is not for him to say he did not know that the person for whom he held the goods had a good title. This would be otherwise, if notice to the depositary were a necessary element in the title of the consignee; but it is not. That title rests upon the intent of the parties to create and vest a property in the goods, upon the valuable consideration parted with by the factor on the faith of that property, and upon the execution of that intent by setting apart the particular goods in the hands of a third person, to hold for the factor, thus placing them out of the control of the general owner, and within the control of the factor, so that he can exercise and have the benefit of his ownership. And, therefore, I am of opinion that the cases in which it has been held that a delivery to a carrier under a bill of lading, consigning the goods to a factor who has accepted on account of them, vests a property in the factor, are all authorities in favor of the plaintiffs; for they do not depend upon any particular efficacy of a bill of lading, any further than that document manifests the intent of the parties to have the carrier hold the property for and deliver it to the factor. Gibson v. Stevens, and Grove v. Gilmor [supra]; Haille v. Smith, 1 Bos. & P. 564; Anderson v. Clark, 2 Bing. 20; Desha v. Pope, 6 Ala. 690. That the right of a factor to a lien cannot rest on a bill of lading alone, is clear, from Patten v. Thompson, 5 Maule & S. 350; and in Bryans v. Nix, 4 Mees. & W. 791, Mr.

Baron Parke declares, in terms, what that case required, that there is no difference as respects this question, between a bill of lading and any other competent evidence of the purpose and acts of the parties. Gibson v. Stevens rests on the same ground.

Perhaps some confusion exists, from confounding the property acquired by such an arrangement as was made in this case, with the lien of a factor. It is correctly said, that actual possession by the factor is necessary to his lien; and when the goods have been placed in the hands of a depositary employed by the owner, to be delivered afterwards into the actual possession of the factor, it can hardly be said that the latter has actual possession of the goods, and so, it is argued, he cannot have a lien as factor. But the property acquired by depositing the goods in the hands of a third person, under an agreement that they shall be delivered to one who has advanced money or negotiable paper on account of them, and shall be by him sold, is something more than a lien. The legal title to the property may be considered as passing to him for the purposes indicated by the agreement. Such is the view taken by Eyre, C. J., in the leading case of Haille v. Smith, and I perceive no sound reason for doubting its correctness. It relieves transactions of this nature from all difficulty arising from the want of actual possession by the factor, and places them upon the same footing as absolute sales to bonâ fide purchasers, so far as respects the vesting of the title intended to be created. And in Gibson v. Stevens the court held that, as respects the legal title, there is no distinction between the person who has made advances and taken security on the goods, and the case of an actual purchaser. In my judgment, this result is in accordance with the interests of trade, and with the usages of commerce, and allows only a just and safe effect to the agreements of parties.

My opinion is, that the plaintiffs had a property in these goods on which the action of replevin may be sustained and the judgment must be in their favor. Judgment for plaintiffs.