[No. 11036.   In Bank. — September 24, 1887.]

## NATIONAL BANK OF D. O. MILLS AND COMPANY, RESPONDENT, *v.* F. C. PORTER ET AL., APPELLANTS.

FACTOR — LIEN FOR GENERAL BALANCE — SALE BY CONSIGNOR — NOTICE TO FACTOR. — A factor to whom goods are consigned for sale, but who has made no specific advances thereon, does not acquire a lien on the goods for a general balance due him from the consignor, if prior to the shipment the consignor has sold the goods, and the factor prior to receiving possession thereof is notified of the sale by a letter of advice, and an indorsement on the bill of lading.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

In October, 1883, Brewer & Co. sold to Cooke and Son, the assignors of the plaintiff, a car-load of grapes, which were not then on hand, but which were procured in a few days, and which Cooke then asked to be shipped to the defendants for sale. The goods were shipped accordingly by rail to the defendants in Chicago, in the name of Brewer & Co., because that firm had a yearly guaranty with the railroad company exempting them from paying freight in advance on shipments of fruit. As soon as the bill of lading was issued, both the original and the duplicate were assigned to Cooke and Son, who advised the defendants by letter of the shipment. With the same train on which the grapes were sent, a letter was forwarded to the defendants, informing them that the fruit belonged to Cooke and Son. The bill of lading, when received by the defendants, bore the indorsement of the assignment of Brewer & Co. The defendants received the goods, and sold them, and after paying the charges thereon, refused to pay over the balance, claiming to be entitled to apply it to a general balance due them from Brewer & Co. The defendants did not make any specific advance on the shipment in question. The further facts are stated in the opinions.

*Hart & White*, for Appellants.

The defendants had a lien on the goods for the general balance due them, by reason of their special agreement with Brewer & Co., and the prior dealings between them. ( *Valle* v. *Cerre's Adm'r*, 36 Mo. 588; *Elliott* v. *Cox*, 48 Ga. 39; *Winter* v. *Coit*, 7 N. Y. 294; *Beebe* v. *Mead*, 33 N. Y. 589; *Anderson* v. *Clark*, 2 Bing. 20; *Martin* v. *Pope*, 6 Ala. 532; *Bailey* v. *H. R. R. R. Co.*, 49 N. Y. 75.)

*Freeman & Bates*, for Respondent.

Usually, if a shipment is accompanied by an unassigned bill of lading or forwarding receipt, and the factor or consignee obtains possession of the goods and such receipt, he obtains a lien; but at any time prior to his obtaining such possession, the consignor may sell the goods, and the sale takes precedence over any claim of the factor or consignee for the payment of a general balance due him. (*Bank of Rochester* v. *Jones*, 4 N. Y. 497; *Kinloch* v. *Craig*, 3 Term Rep. 119; *Bruce* v. *Wait*, 3 Mees. & W. 15; *Mitchel* v. *Ede*, 11 Ad. & E. 888; *Conrad* v. *Atlantic Ins. Co.*, 1 Pet. 445; *Davis* v. *Bradley*, 28 Vt. 118; S. C., 65 Am. Dec. 226; *Davenport Nat. Bank* v. *Homeyer*, 45 Mo. 149; *Cayuga Co. N. Bank* v. *Daniels*, 47 N. Y. 631; *Marine Bank* v. *Wright*, 48 N. Y. 4.)

BELCHER, C. C.—When this case was before Department One of this court, it was, in our opinion, rightly decided. The law applicable to the facts appearing in the record was correctly stated, and little more need now be added.

It is urged for the appellants that the facts as stated in the opinion are at variance with those stated in the complaint, and that by not looking at the complaint the court was led into error. The allegation in the complaint which is referred to is to the effect that Brewer & Co., being the owners of the car-load of grapes in question, on the third day of October, 1883, shipped the same by

railroad from Sacramento to Chicago, to be there sold by the defendants as commission merchants, and the proceeds to be accounted for to the owners of the fruit; that Brewer & Co. then and there received from the railroad company a bill of lading, and on the same day assigned the grapes to Cook and Son, by writing on the bill of lading an assignment, which is set out, and by delivering such bill of lading to Cook and Son. It is claimed that under this averment there can be no question that Brewer & Co. owned the grapes when they were shipped, and that if there was an agreement between the parties, either express or to be implied from their acts and course of dealing, that the consignees should have a lien upon the grapes for any general balance due them, then their lien attached the moment the grapes were delivered to the railroad company to be shipped, and that lien could not afterwards be divested by any act of the consignors. In support of this position the principal cases relied upon are *Valle* v. *Cerre's Adm'r*, 36 Mo. 588, and *Bailey* v. *H. R. R. R. Co.*, 49 N. Y. 75, 76.

In the first-named case it is said: "Whether or not the given consignment is to be considered as made to cover a general balance of account will depend upon the special arrangements, agreements, and understanding of the parties; but where such an agreement exists, and the consignment is made in pursuance of it, and there is nothing else in the case which is inconsistent with the hypothesis, the case would be governed by the same principle, and a delivery to the carrier will be considered as a constructive delivery to the consignee. (Russell on Factors, 203; *Clark* v. *Mauran*, 3 Paige, 373; *Bryans* v. *Nix*, 4 Mees. & W. 791; *Desha* v. *Pope*, 6 Ala. 690; 3 Parsons on Contracts, 261, and note *w*.) In such case the shipment and delivery of the goods to the carrier, under the bill of lading, amounts to a specific appropriation of the property, with an intention that it shall be a security or a payment to the consignee for the advances he has made."

In the New York case, the court said: " It must appear that the delivery was made with intent to transfer the property. Until this is done the parol agreement is executory, the title remains in the consignor, and he has the power to transfer the property to whomsoever he pleases. . . . . If A has property upon which he has received an advance from B, upon an agreement that he will ship it to B to pay the advance, or to pay any indebtedness, he may or he may not comply with his contract. He may ship it to C, or he may ship it to B, upon conditions. As owner he can dispose of it as he pleases. But if he actually ships it to B in pursuance of his contract, the title vests in B upon the shipment. The highest evidence that he has done so is the consignment and unconditional delivery to B of the bill of lading. If the consignor procures an advance upon the bill of lading from a third person, or delivers or indorses the bill of lading to a third person, for a consideration, it furnishes equally satisfactory evidence that the property was not delivered to the consignee, for the simple reason that it was delivered to some one else. . . . . As against the consignor, the delivery of the property to the carrier, with intent to comply with his contract, vests the title in the consignee. It is largely a question of intention."

We fail to see how it can be said that these cases support the contention of appellants, and none which go further in that direction have been called to our attention. Here it does not appear that the car-load of grapes in question was shipped by Brewer & Co. in pursuance of their alleged agreement with defendants, nor that the delivery was made with the intent to transfer the property to them. On the contrary, it is clearly shown by uncontradicted evidence that it was understood in advance that the shipment was to be made for and on account of Cooke and Son, to whom the bill of lading was assigned and delivered immediately upon its issuance. The shipment and assignment of the bill of lading were

parts of one transaction, and were wholly inconsistent with the hypothesis upon which the appellants base their claim.

As the case was presented, we see no error in the rulings of the court below, and the judgment and order should therefore be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT. —For the reasons given in the foregoing opinion, the judgment and order are affirmed.

The following is the opinion of Department One above referred to, rendered on the 30th of June, 1886:—

Ross, J. — In respect to the *bona fides* of the sale by Brewer & Co. to Cooke & Son, who were plaintiff's assignors, the jury were fully instructed by the court below, and their verdict includes a finding to the effect, that the sale was a valid one. As the evidence is sufficient to sustain the verdict in that regard, we must take it that Cooke & Son acquired the title to the grapes, the net proceeds of which form the subject of the present action.

It is urged, however, by the defendants, who are the appellants here, that the title acquired by Cooke & Son was subject to a lien in defendants' favor upon the grapes, to pay a general balance due them from Brewer & Co., the amount of which was greater than the net proceeds realized upon the sale of the property. It is not claimed that defendants, who were factors, and whose principal place of business was in the city of Chicago, made to Brewer & Co. any advances upon the particular car-load of grapes in controversy; but one of the defendants testified at the trial that the firm of Porter Brothers had, for a number of years prior to the transaction in question, been in the habit of doing business for Brewer & Co. in Chicago, under an arrangement by which Brewer & Co. were to ship them grapes, to be

sold on commission for the account of Brewer & Co., and Porter Brothers were to make to Brewer & Co. such advances from time to time as they (Porter Brothers) should think the product would bear. There was no understanding as to the amount of grapes that were to be so shipped, but Brewer & Co. " were to ship, as a rule, all that the market would take, and all that they could get."

As applicable to this testimony, counsel for defendants requested the court to give the jury this instruction:—

" The jury are instructed that if there was a general understanding between the defendants and M. T. Brewer & Co. that the defendants would make advances to said M. T. Brewer & Co., and that M. T. Brewer & Co. would make shipments of grapes to them, which they would sell, and apply the proceeds to the payment of such advances, then the defendants would have a lien upon the grapes shipped to them by said M. T. Brewer & Co. for the payment of such advances, which lien would attach at the moment said grapes were delivered to the railroad company to be shipped to said defendants, and it is not necessary that advances be made upon the particular car-load which is the subject of this litigation, to create such a lien."

The court refused to give this instruction; but to the contrary instructed the jury to the effect that defendants would have no lien for former advances until they had gotten possession of the property, and that " for the purpose of that lien the goods would not be considered in their possession from the mere fact that they were delivered on the car under a bill of lading in which Porter Brothers were named as consignees."

The action of the court in each particular was excepted to by defendants' counsel, and constitutes the chief ground of the appeal.

The case shows that the grapes were shipped to defendants in the name of Brewer & Co., to whom a bill

of lading was issued by the railroad company; but it also shows that they were so shipped at the request of Cooke & Son, for the reason that Brewer & Co. had a yearly guaranty with the railroad company, which exempted them from a rule requiring payment of frieght in advance on shipments of fruit. The case further shows that Brewer & Co. wrote to defendants by the same train that carried the grapes that, although shipped in their name, they were the property of Cooke & Son, for whose account they were to be sold, and Cooke & Son also advised defendants of the same fact, inclosing them at the same time the bill of lading, which was properly assigned to them by Brewer & Co. as soon as issued by the railroad company.

Upon this state of facts, we think it clear that defendants did not acquire a lien upon the property for the balance due them by Brewer & Co., and that the court below was right in refusing to give the instruction requested by defendants. They did not acquire a lien, for the reason, among other reasons, that Brewer & Co. did not own the property when it was delivered to the carrier, nor at any time afterwards. Defendants advanced nothing upon the faith of any apparent ownership by Brewer & Co., growing out of the fact that the property was shipped in their name, and the bill of lading issued to them. The reason for making the shipment in that way has been stated, and defendants were promptly advised of the true owner. It is very clear that Brewer & Co. did not deliver the grapes to the carrier as their property, nor under the agreement they had with defendants. It is plain, therefore, that the latter did not acquire any lien for the advances previously made by them to Brewer & Co.

We see no prejudicial error in the record.

Judgment and order affirmed.

McKinstry, J., and Myrick, J., concurred.