## MAXWELL & al. *versus* BROWN.

It is provided by law that no contract for the sale of any goods, wares or merchandize, for the price of thirty dollars or more, shall be allowed to be good, unless the purchaser shall accept part of the goods so sold, and actually receive the same.

Where the defendant verbally agreed for a cargo of coal, of a certain kind, at a price fixed per ton, the plaintiffs to procure a vessel in which to transport it to him, and the coal was not received on account of the vessel being wrecked; in a suit for the price, it was *held* that there must be an acceptance as well as delivery, and that the action could not be maintained.

On EXCEPTIONS, HOWARD, J., presiding.

ASSUMPSIT to recover the price of two hundred and eighty

four tons of coal shipped on board the "schooner Gen. Hersey," at $3,65 per ton.

The plaintiffs resided at Delaware City, in the State of Delaware, and the defendant at Portland, in this State.

One of the plaintiffs called on defendant at his place of business and wanted to introduce their coal there; said it was the same kind that had previously been sold by the witness to Brown. Brown wanted some of the egg size and some broken coal. Plaintiff said the price of it was $3,65. The defendant said "well, you may send me one cargo."

Something was said about sending a vessel from Portland, but Brown said, "I suppose you can take up vessels at Delaware City as well as at Philadelphia;" and did not limit him as to the size of the vessel. The conclusion was that plaintiffs should send him a cargo.

The amount of coal charged was shipped by plaintiffs on board the "schooner Gen. Hersey," for which the captain signed shipping papers, and was consigned to defendant, he to pay the freight of $1,92 per ton.

The vessel went ashore on Cape Henlopen; part of the cargo was thrown overboard, the rest was taken back to Philadelphia, where a survey was called and it was decided to sell the balance at auction. Both parties were notified.

After the evidence on the part of the plaintiff was out, the presiding Judge ruled that the action could not be maintained, and ordered a nonsuit, to which order exceptions were taken.

*Shepley & Dana,* in support of the exceptions.

It was competent for defendant to constitute the plaintiffs his agents in putting the coal on board the vessel. *Elmore* v. *Stone,* 1 Taunton, 458. Where plaintiffs delivered the coal to the captain, it was a delivery to the defendant's own carrier and agent, selected by himself, and the property passed to him and was at his risk. *Dalton* v. *Solomonson,* 3 B. & P. 582.

The defendant might have insisted upon his right to exam-

ine the cargo before accepting it, but that right he could waive, and allow another to accept it for him. *Snow* v. *Warner*, 10 Met. 132; see 8 T. R. 230; 5 Bur. 2580; 1 T. R. 659.

These cases show that a delivery of goods upon a verbal order, to the carrier, is such an execution of the agreement as to preclude the vendor from taking advantage of the statute of frauds to reclaim the goods. See also *Kent* v. *Hutchinson,* 3 Bos. & Pul. 232.

*Rand* and *W. P. Fessenden, contra.*

APPLETON, J. — This is an action of assumpsit in which the plaintiffs seek to recover of the defendant the price of two hundred and eighty-four tons of coal, alleged to have been shipped at Philadelphia on board the schooner Gen. Hersey.

From the evidence, as reported, it appears, that one of the plaintiffs, who are merchants residing at Philadelphia, called on the defendant at Portland and proposed to sell him a quantity of coal; that the price was to be $3,65, per ton; that after some conversation on the subject the defendant said " well, you may send me a cargo;" that something was said about sending a vessel from Portland, but the bargain as finally concluded was, that the plaintiffs should procure a vessel and send defendant a cargo. There was no limit as to the size of the vessel.

The coal was shipped by the plaintiffs on board a vessel chartered by them and consigned to the defendant, and the master signed a bill of lading in the usual form, engaging to deliver the coal to the defendant upon his paying freight. The vessel was cast ashore on Cape Henlopen; part of the cargo was thrown overboard to lighten the vessel; the master then took the vessel back to Philadelphia, called a survey, and it being considered advisable to sell the balance of the cargo, it was done, and due notice was given thereof to the plaintiffs and defendant, neither of whom acknowledged the notice or made any answer thereto.

The defence rests upon the statute of frauds, R. S., c.

136, § 4, which is in these words, "no contract for the sale of any goods, wares or merchandize for the price of thirty dollars or more, shall be allowed to be good, unless the purchaser *shall accept part of the goods so sold and actually receive the same,* or give something in earnest to bind the bargain or in part payment, or some note or memorandum in writing of the said bargain be made and signed by the party to be charged by such contract or by his agent, thereunto by him lawfully authorized." The language of our statute is almost verbally identical with that of the 17th § of 29 Car. 2, c. 2, which is the English statute on the same subject. The construction therefore, which the English courts have given to similar language in their statutes must be regarded as of no slight authority.

From the language of this statute it is apparent, that when there is no written contract, a mere delivery will not be sufficient. There must further be an acceptance by the purchaser, else he will not be bound. In *Balding* v. *Parker*, 2 B. & C. 37, "it was formerly considered," observes RUST, J., "that a delivery of goods by the seller was sufficient to take a case out of the 17th section of the statute of frauds; but it is now clearly settled, that there must be an acceptance by the buyer as well as a delivery by the seller." In *Tempest* v. *Fitzgerald,* 3 B. & Ald. 680, the defendant, in August, 1817, bargained for a horse which he was to take away about Sept. 22, following. The parties understood it to be a ready money bargain. On Sept. 20, the defendant used the horse, gave directions respecting it and requested the plaintiff's son to keep it for him another week, which he engaged to do. The horse died on Sept. 26, and the defendant refusing to pay for the horse, an action for its price was commenced, but it was held, that no right of property passed till the price was paid, and that the action could not be maintained.

In *Holmes* v. *Haskins,* 9 Exch. 752, the defendant verbally agreed to purchase of the plaintiff some cattle then in his field. After the bargain was concluded, the defendant

felt in his pocket for his check book in order to pay for them, but finding he had not got it, he told the plaintiff to come to his house in the evening for the money. It was agreed that the cattle should remain in the plaintiff's field for a few days, and that the defendant should feed them with the plaintiff's hay, which was accordingly done. In this case it was held, there was no evidence of an accept-·ance of the cattle to satisfy the statute of frauds. In *Hunt* v. *Hecht*, 8 Exch. 814, it was held that there could be no acceptance and actual receipt of goods within the 17th section unless the vendor had an opportunity of judging whether the goods sent compared with the order. " In my opinion," remarks Martin, B., " an acceptance to satisfy the statute, must be something more than a mere receipt; it means some act after the vendor has exercised or had the means of exercising his right of rejection." In *Norman* v. *Phillips*, 14 Mees. & Wels. 278, the defendant, a builder at Wallingford, gave the plaintiff, a timber merchant in London, a verbal order for timber, directing it to be sent to the Paddington station of the Great Western Railway, to be forwarded to him at Wallingford, as had been the practice between the parties on previous dealings. The timber was sent and arrived at Wallingford station, April 19, and the defendant was informed by the delivery clerk of its arrival, and said he would not take it. An invoice was sent a few days after, which the defendant received and kept, without making any communication to the plaintiff till May 28, when he informed him that he declined taking it. It was held that although there might be a scintilla of evidence for the jury of the acceptance of the lumber within the statute, yet that there was not sufficient to warrant them in finding that there was such an acceptance, and the Court set aside a verdict for the plaintiff as not warranted by the evidence. " The true line appears to be," says Alderson, B., " that acceptance and delivery under the statute of frauds, means such an acceptance as precludes the purchaser from objecting to the quality of the goods; as for instance, if instead

of sending the goods back he keeps or uses them. In *Hanson* v. *Armitage*, 5 Barn. & Ald. 557, H. A., a merchant in London, had been in the habit of selling goods to B, resident in the country, and of delivering them to a wharfinger in London, to be forwarded to B. by the first ship. In pursuance of a parol order from B., goods were delivered to and accepted by the wharfinger, to be forwarded in the usual manner; but the Court held this was not a sufficient acceptance to take the case out of the statute. In *Mendith* v. *Meigh*, 2 Ell. & Black. 364, goods ordered by parol were shipped on board a general ship, consigned to a carrier named by the vendee, to forward them, notice being sent to the vendee of the shipment, and the bill of lading being also sent to the carriers, which was not returned, nor was any step taken to repudiate the bargain until after news arrived of the loss of the ship and the goods, and it was decided that there was no sufficient receipt and acceptance of the goods to satisfy the statute of frauds, in the absence of a written contract, and that the vendees were not liable for their price. " I am of opinion," says Lord CAMPBELL, C. J., " that there was no evidence to go to the jury in this case, on which they would have been justified in finding that the goods had been accepted and actually received, so as to satisfy the 17th section of the statute of frauds."

The language of the statute is unequivocal, and requires the action of both parties. There must be acceptance as well as delivery. The property of the goods must vest in the vendee as their absolute owner, discharged of all lien, and so that he shall be precluded from taking any objection to the quantity or quality of the goods sold. *Shindler* v. *Houston*, 1 Coms. 261; *Outwater* v. *Dodge*, 6 Wend. 400.

*Exceptions overruled.*