FIRST NATIONAL BANK OF HELENA, respondent, *v.* McANDREWS ET AL., appellants.

COMMERCIAL LAW — *Consignor and consignee — Title, when passes on shipment — Bill of lading.*— The transmission of a bill of lading by the consignor to the consignee is a delivery of the possession of the goods covered by it, and the title to the property shipped thereby passes from the former to the latter. But the mere shipment of goods, in pursuance of a contract between the consignor and consignee, whereby the former was to pay the freight, and the latter, after he had sold the goods, was to credit the proceeds to the account of the consignor, does not vest the title to the property shipped in the consignee, in the absence of a bill of lading or notice of the shipment to him.

*Appeal from Second District, Deer Lodge County.*

Robinson & Stapleton, for appellants.

There was no sale of the bullion to the plaintiff. The carrier was only agent of vendor. The evidence and findings show only an executory contract. They do not sustain the judgment.

E. W. & J. K. Toole and Wm. Wallace, Jr., for respondent.

The first assignment of error is improperly made, in that it does not point out the particular finding the evidence fails to support.

The findings are findings of fact and are supported by the evidence.

The findings support the judgment in this:

1. Said contract is not illegal, void as against public policy, or within the operation of the statute of frauds.

2. It is an agreement for sale, and became an absolute sale on the occurrence of the subsequent appropriation, or on the shipment of the bullion.

3. The title to the bullion passed at the time of the delivery to carrier, and appellants were guilty of conversion in taking the same as property of the Northwestern Company while in transit.

Wade, C. J. This was an action of claim and delivery in which the plaintiff sought to recover the possession of certain cases of silver bullion shipped to it by the Northwestern Company at Phillipsburg, and, while *en route*, seized by attachment in an action by Samuel E. Larrabie against said Northwestern Company. The case was tried to the court, who made certain findings of fact, and thereon rendered a judgment in favor of plaintiff, from which, and an order overruling a motion for a new trial, the defendants appeal to this court.

The facts found by the court are as follows:

1. That the bullion described in plaintiff's complaint was produced from the Northwestern Company and was shipped by it to Helena, consigned to plaintiff.

2. That the same was seized by defendants, McAndrews and Smith, under a writ of attachment, while in transit, in an action by defendant Larrabie against the Northwestern Company, and that defendants, McAndrews and Smith, were, at said time, the sheriff and deputy sheriff of Deer Lodge county, Montana, and that all the proceedings to obtain said writ were regular, and that judgment was entered in favor of said Larrabie against said Northwestern Company in said action, and defendants held said bullion by virtue of said writ of attachment.

3. That at and prior to the shipment of the bullion in controversy in this case, there was an express contract between plaintiff and the Northwestern Company that, in consideration of advances to be made by plaintiff to said company in carrying on its mining operations, said company would ship to plaintiff its products of bullion, which was to be credited to its account.

4. That at the time said bullion was shipped, said plaintiff had advanced to said company, upon the faith of said contract, about the sum of $6,000, which stood as a charge against said company; and is yet unliquidated and unsettled.

5. That said bullion was, in accordance with the terms of said contract, shipped, marked and consigned to said plaintiff, and placed in possession of, and received by, Gilmer & Salisbury, common carriers of freight and express matter, upon a contract at special rates, to be paid at Helena, Montana, by plaintiff, upon receipt of said bullion by it, at said place, said charges for freight to be charged to the account of said company.

6. That said bullion was to be credited to the account of said company upon a sale thereof by plaintiff, and that said account was a running account.

7. That after said bullion was so shipped and consigned to said plaintiff, and while in possession and custody of said carriers *en route* to its destination, the same was attached at the suit of Larrabie, and levied upon, by his

co-defendants, as the officers charged with the execution of said process, on the 31st day of May, 1879, at Deer Lodge city, Montana.

8. That said property was, at said time, of the value of $3,000, and was, and still is, detained by defendants.

The bullion in question, having been "billed, shipped, marked and consigned" to the respondent under and by virtue of the contract mentioned in the findings of fact by the court, and placed in the possession of the common carrier, did the possession of, and property in, the bullion thereby become vested in the respondent, or did such possession and property remain with the Northwestern Company until the bullion had been actually received by the respondent and credited to the account of the company?

There was no bill of lading transmitted to the bank, and no letter or notice informing it that the bullion had been shipped. The advances by the bank had been made prior to the shipment, and the situation was as if the shipment had been made under a contract in satisfaction of antecedent advances.

We will have to consider what effect the absence of a bill of lading and of notice of the shipment to the bank had upon the rights of these parties. A bill of lading is a commercial instrument, and is a written acknowledgment signed by the master of a vessel or by a common carrier, that he has received the goods therein described from the shipper, to be transported on the terms therein expressed to the described place of destination, and there to be delivered to the consignee, or parties therein designated. Abbott on Shipping (7th Am. ed.), 323; *O'Brien* v. *Gilchrist*, 34 Me. 558; 1 Parsons on Shipp. 186; Maclachlan on Shipp. 338; Emerigon, Ins. 521.

A bill of lading is a symbol of the ownership of the goods covered by it; a representative of the goods. It is regarded as so much cotton, grain, iron or other articles of merchandise. The merchandise is very often sold or

pledged by the transfer of the bill of lading which covers it. *Shaw* v. *Railroad Co.* 101 U. S. 564, 565. Hence, it is held by the authorities that the transmission of a bill of lading by the consignor to the consignee is a delivery of the possession of the goods covered by it, and that thereby the title to the property passes from the consignor to the consignee. See *Hallir* v. *Smith*, 1 B. & P. 563; *Desha et al.* v. *Pope*, 6 Ala. 690; *Gibson* v. *Stevens*, 8 How. 384; *Grove* v. *Gilmore*, id. 429; *Bryan* v. *Nix*, 4 M. & S. 775; *Anderson* v. *Clark*, 2 Bing. 20; *Holbrook* v. *Wright*, 24 Wend. 169; *Grosvenor* v. *Phillips*, 2 Hill, 147; *Sumner* v. *Hamlet*, 12 Pick. 76; *Nesmith et al.* v. *Dyeing Co.* 1 Curtis, 130; *Valle* v. *Cerre*, 36 Mo. 575.

The transmission of a bill of lading amounts to the actual delivery of the possession of the property described in it, and is a compliance with the statute of frauds as to the sale and delivery of property. The contract mentioned in the findings was an executory contract, to be completed by the delivery of the bullion therein described. Knight, the cashier of the bank, testifies that the bullion was to be delivered to the bank at Helena. In the absence of a bill of lading, or a letter or notice from consignor to consignee informing him of the shipment of bullion, is the fact that the bullion in question was "billed, shipped and marked and consigned" to the respondent such an appropriation of the property to the contract as completes a bargain and sale, and delivers the possession thereof to the purchaser? If the consignor had done some conclusive, unconditional act, by which the consignee was, or was to be, informed that the bullion shipped was to be applied on the consignor's account for money advanced, then undoubtedly the delivery of the property to the common carrier, properly marked and addressed, would have been a delivery to the consignee, and an appropriation of the property to the contract. But the mere shipment of the property with-

out notice was not such conclusive act. The shipment did not bind the consignor. He did not thereby lose his control over the property. He might have stopped it while *en route* to its destination, and sent it to some other place or person. By the terms of the contract the company, the consignor, was to pay the freight, and the bullion was not to be credited to the account of the company until it had been received and sold by respondents. There was something to be done besides a delivery to respondent: "Said bullion was to be credited to the account of the company upon a sale thereof by plaintiff." The respondent had no right to make this credit until a sale of the bullion. When the property was sold the proceeds belonged to the respondent. If there was to be no credit until a sale, what property passed until a sale had been made? There must be an acceptance as well as a delivery. Suppose this bullion had been "billed, shipped and marked" at double its value, would the consignee have been bound by the valuation of the consignor? The carrier had no right to accept of the property for the consignee; the value was to be ascertained by a sale, and then, and not until then, had the consignee any right to make the credit.

In the case of *Johnson* v. *Cuttle*, 105 Mass. 449, the court says: " A common carrier, whether selected by the seller or by the buyer, to whom the goods are intrusted, without express instructions to do anything but to carry and deliver them to the buyer, is no more than an agent to carry and deliver the goods, and has no implied authority to do the acts required to constitute an acceptance and receipt on the part of the buyer, and to take the case out of the statute of frauds. The steamboat company having no authority to receive and accept the goods so as to bind the buyer, and there being no evidence that the buyer, in person or by any authorized agent, ever had actual possession of the goods, or opportunity to see them, or ascertain whether they conformed

to his order, or ever exercised any control over them by sale or otherwise, or even received any bill of lading of the goods, the case is within the statute of frauds and the action cannot be maintained." If a bill of lading had evidenced the intent and purpose of the consignor in shipping the bullion, or if this intent had been evidenced by any other conclusive unconditional act, such as a notice of the shipment to the consignee, then a delivery to the carrier, in pursuance of such bill of lading or notice, would have vested the title in the consignee. But in a case where the consignee had never seen or accepted the property, where there was no bill of lading or notice of shipment, the consignor paying freight, and having the right to recall the goods, or to change their destination, and the agreement under which they are shipped providing that the property shall not be credited to the account of the consignor until the same has been actually received and sold by the consignee, then the mere act of shipment would not have the effect to vest the title in the consignee.

In the case of *Holliday* v. *Hamilton*, 11 Wall. 564, the supreme court of the United States says: "If this were the case of a mere agreement to ship produce in satisfaction of antecedent advances, which will not in general give the factor or consignee a lien upon it for his general balance until he obtains actual possession of it, the attachment would hold the property. But the agreement in question is of a different character and rests on a different legal principle. It appropriates specifically one thousand two hundred and fifty bags of corn to Hamilton & Dunnica, with an intention that they shall sell it to pay the draft drawn against it, and this appropriation did not rest in intention merely, for it was exercised, so far as the parties in St. Louis could execute it, by the transmission of a bill of lading to Hamilton & Dunnica. As soon as the corn was deposited with the common carrier, who was the bailee for that purpose, the title to it

and the right of property in it was changed and vested in Hamilton & Dunnica, to whom it was delivered. This is the effect of all the cases on the subject."

This case is a clear illustration of the rule. If there was a mere agreement to ship goods or produce to pay for advances, the property shipped would not belong to the consignee until actually received and possessed by him. But if the agreement appropriates specific property to the payment of such advances, and such appropriation is evidenced and authenticated by a bill of lading, then the title to the property passes to the consignee by a delivery thereof to the carrier.

In the case of *Hodges* v. *Kimball*, 40 Iowa, 577, the facts were that, in the spring of 1875, the plaintiffs and W. H. Valleau, at Milwaukee, in the state of Wisconsin, entered into a contract whereby the plaintiffs were to advance the money to said Valleau, on his drafts drawn on them, to purchase wheat and other produce, to be shipped by him, consigned to them at Milwaukee, to be by them sold on the usual commissions, and out of the net proceeds thereof to reimburse themselves for the advances so made; that said Valleau was to forward the railway shipping receipts to plaintiffs as soon as consignments were made; that, in pursuance of said contract, Valleau, on the 10th day of May, 1876, shipped five carloads of wheat, consigned to plaintiffs, and delivered to the Chicago, Milwaukee & St. Paul Railway Company, and receipts given therefor; that on the same day, and after said shipment and consignment, said wheat was attached as the property of Valleau, at the suit of Kimball & Farnsworth against him, and was afterwards retaken upon a writ of replevin in this action. This contract and the attending facts are, in substance and effect, the same as in the case at bar. The court, in deciding the case, says: "The case must be determined upon the facts reported by the referee, with the additional fact that the grain was not bought with money furnished by the

plaintiffs. From the facts reported, it appears that the grain in question was shipped on the 10th day of May, 1876, from Cresco. On the same day the grain was attached at Cresco, at the suit of the defendants, as the property of W. H. Valleau. The shipping receipts were not forwarded to the plaintiffs until the 13th day of May, and did not reach them until the 15th. The advancements, on account of which the plaintiffs claim their lien, were all made before this grain was shipped [as in the case we are considering]. The facts of this case bring it upon all-fours with *Elliot* v. *Bradley,* 23 Vt. 217, in which it was held that when goods are consigned to a factor under an agreement that he shall sell them, and apply the proceeds to repay advances previously made by him to the consignors, he must, in order to acquire a valid lien upon the goods, as against the creditors of the consignor, have the actual or constructive possession of the goods."

The court then recites the facts in the Vermont case, as follows: " In this case an agreement was made between a manufacturer of cloth in the state of Vermont, and the plaintiffs, who were commission merchants of New York, by which the manufacturer was to send his cloth to the plaintiffs for sale on commission, and was to draw upon them in advance of the sales, and, also, in advance of sending the cloth, if necessary, upon sending the invoices of the cloth forwarded or to be forwarded, and the plaintiffs were to apply the avails of the sales to repay their advances. Under this arrangement, the consignor forwarded to the plaintiffs, from time to time, invoices of the cloth sent and to be sent, and the cloth was then sent to forwarding merchants at Burlington, and was by them sent to the plaintiff as soon as convenient. The drafts were drawn, and the acceptances charged and sales credited upon general account. No bill of lading was sent to the plaintiffs, but shipping bills were sent by

the forwarding merchants to their agents in New York, describing the consignor, the consignees, and the marks upon the goods, in order to guide the agents in delivering the goods to the consignees. It was held that the goods, after being sent to the forwarding merchants, and while upon the transit between Burlington and New York, remained at the risk, and subject to the control, of the consignors, and liable to attachment by their creditors. In fact, this case is stronger in favor of the consignees than the one at bar, for the cloth was in transit, and the shipping lists had been sent to the agents of the forwarding merchants, while in the case at bar, the wheat had not moved from the place where it was shipped, and the shipping receipts still remained in the hands of the consignor."

The court also decides that the case of *Davis* v. *Bradley*, 28 Vt. 118, is not in conflict with that of *Elliot* v. *Bradley*, and cites *Bank of Rochester* v. *Jones*, 4 Conn. 497; *Winter* v. *Coit*, 3 Seld. 228; *Kimlock* v. *Craig*, 3 T. R. 119, in support of its decision, and reviews *Holbrook* v. *Wright*, 24 Wend. 169; *Grosvenor* v. *Phillips*, 2 Hill, 147; *Bailey* v. *Hudson R. R. R. Co.* 49 N. Y. 70; *Hallir* v. *Smith*, 1 B. & P. 563, and *Krulder* v. *Ellison*, 47 N. Y. 36, and finds that they are not in conflict with its decision. Upon a motion for a rehearing, the following additional authorities in its support were cited: *Anderson* v. *Clark*, 2 Bing. 20; *Cuming* v. *Brown*, 9 East, 506; *Virtue* v. *Jewell*, 4 Camp. 31; *Patten* v. *Thompson*, 5 M. & S. 350; *Wade* v. *Hamilton*, 3 Ga. 450; *Grove* v. *Brien*, 8 How. 429; *Bryan* v. *Nix*, 4 M. & S. 774; *Evans* v. *Nichols*, 3 Man. & G. 614; *Alderson* v. *Temple*, 4 Bun. 2235; *Barley* v. *Taylor*, 5 Hill, 577; and the court, in reviewing them, says: "We have examined all of these authorities with care. The most of them are cases where a bill of lading, or receipt, or letter of information, was forwarded to the consignee, or advancements were made

upon the faith of the particular consignment, and they fall within the principle of the cases reviewed in the foregoing opinion."

The rule seems to be that in order to change the title to the property shipped and vest it in the consignee, there must be a bill of lading, receipt or letter of information forwarded to the consignee, or that the advancements were made upon the faith of the particular consignment. It is claimed, however, that this contract was an executory one, and that the shipment of the bullion completed the purchase thereof by the consignee. In answer to this it may be said that this is not a contract of purchase and sale. It is a mere loan of money with an agreement to ship bullion as security to the loan. The shipment is not payment. The bullion has to be sold by the consignee and converted into money before any credit can be made on the account of the consignor, or applied upon the loan. This is not a purchase of bullion. A person cannot become a purchaser without his knowledge or consent. There must be an acceptance and delivery of possession. If this were a purchase, there was no acceptance of the property by the purchaser. He had never seen the property. It had never been in his possession; he did not have any notice of the shipment. He could not accept the goods even by a carrier appointed by himself. Says Mr. Benjamin (Benj. on Sales, 149, sec. 160): "It is settled that the receipt of goods by a carrier or wharfinger appointed by the purchaser does not constitute an acceptance, these agents having authority only to receive, not to accept, the goods for their employers." *Boardman* v. *Spooner*, 13 Allen, 353; *Grimes* v. *Van Vetchen*, 20 Mich. 410; *Rodgers* v. *Phillips*, 40 N. Y. 519; *Denmead* v. *Glass*, 30 Ga. 637; *Shepherd* v. *Pressey*, 32 N. H. 49; *Maxwell* v. *Brown*, 39 Me. 98; *Spencer* v. *Hale*, 30 Vt. 315; *Cross* v. *O'Donnell*, 44 N. Y. 661; *Snow* v. *Warner*, 10 Met. 132; *Quintard* v. *Bacon*, 99 Mass. 185; *Allard* v. *Greasert*, 61 N. Y. 1.

We do not know upon what principle a consignee or other person can be made the purchaser of property that he has never seen or accepted, and to which possession was never delivered, either actually or constructively.

The judgment is reversed and the cause remanded for a new trial.

*Judgment reversed.*