FIRST NATIONAL BANK, appellant, *v.* McANDREWS ET AL., respondents.

*When a delivery to a common carrier passes title to property.* — A bank entered into an agreement with a mining company, whereby advances were to be made to the latter in consideration of the said company's shipping to the former its products of bullion, which were to be sold and credited to its running account after the payment of freight. Under said contract, a lot of bullion was delivered to a common carrier, as the agent of the bank, and was billed, marked, and consigned to the bank, which was notified by mail of the said delivery. The bank had a special rate with the carrier for the freight. At the time of said shipment the bank had advanced to the mining company twice the value of the bullion. *Held,* that under the state of facts aforesaid, the title to the bullion, upon its delivery as aforesaid, passed to the bank, and that the same was not subject to attachment by a creditor of the company.

*Appeal from District Court, Deer Lodge County.*

SANDERS, CULLEN, & SANDERS, and TOOLE & WALLACE, for the appellant.

Plaintiff is entitled to ten per cent interest upon the value of the bullion, since it was wrongfully taken, as

legitimate and proximate damages resulting from the trespass.    The value was three thousand two hundred dollars, and the property was taken on the thirty-first day of May, A. D. 1879.    See *Whelfield* v. *Whelfield,* 40 Miss. 352; 47 Am. Dec. 350; Jones on Replevin, p. 298, sec. 343, and authorities cited in note 3.

T. L. Napton, for the respondents.

Both the findings, expressed and implied, must be in-consistent with the judgment, or it will stand. *Mathews* v. *Kinsell,* 41 Cal. 512.    It must distinctly and affirmatively appear that those found are all the ultimate facts found in the case, and the judgment roll must speak for itself, or other facts will be supplied or implied to sustain the judgment of the court.    *Semple* v. *Cook,* 50 Cal. 26; *O'Connor* v. *Frasher,* 53 Cal. 435; *Glascock* v. *Ashman,* 52 Cal. 420; *Burnett* v. *Stearns,* 33 Cal. 468.    Only the ulti-mate facts found constitute the basis of the judgment, and these alone should justify this court in reversing the judgment of the lower court.    Such findings as are not ultimate facts, and those contradicting or inconsis-tent with the pleadings, should be disregarded.    *James* v. *Williams,* 31 Cal. 211; 19 Cal. 294; 22 Cal. 160; 33 Cal. 468.

The plaintiff must recover, if at all, upon the cause of action as set out in his complaint, and not upon some other which may be developed by the proof.    *Mondran* v. *Goux,* 51 Cal. 151.    All the essential facts will be pre-sumed to warrant the judgment of the court, and it will not be disturbed.    *City of Oakland* v. *Whipple,* 39 Cal. 112; 28 Cal. 239; 48 Cal. 482.    Probative and ultimate facts are distinguishable, and should not be intermixed. *Bernal* v. *Wade,* 46 Cal. 663; *People* v. *Eaton,* 46 Cal. 100; *Figg* v. *Mayo,* 39 Cal. 262; 33 Cal. 668; 29 Cal. 589; *Stewart* v. *Smith,* 14 Abb. Pr. 75.

This case was before this court before, and every

point in it decided in favor of respondents. See 5 Mont. 325.

The opinion states the case.

McLeary, J.   The complaint in this case was filed on the third day of June, 1879. It is an action of claim and delivery, which was brought to recover the possession of five boxes of silver bullion shipped to the bank by the Northwestern Company of Philipsburg, and seized, *en route,* by virtue of an attachment at the suit of Larrabie against the Northwestern Company. The case was once before brought to this court on appeal of the defendants, and will be found reported in 5 Mont. 325 et seq.

The findings of the court on the first trial were as follows: "1. That the bullion described in plaintiff's complaint was produced from the Northwestern Company, and shipped by it to Helena, consigned to plaintiff; 2. That the same was seized by defendants, McAndrews and Smith, under a writ of attachment, while in transit, in an action by defendant Larrabie against the Northwestern Company, and that defendants, McAndrews and Smith, were, at said time, the sheriff and deputy sheriff of Deer Lodge County, Montana, and that all the proceedings to obtain said writ were regular, and that judgment was entered in favor of said Larrabie against said Northwestern Company, in said action, and defendants held said bullion by virtue of said writ of attachment; 3. That at and prior to the shipment of the bullion in controversy in this case, there was an express contract between plaintiff and the Northwestern Company that, in consideration of advances to be made by plaintiff to said company, in carrying on its mining operations, said company would ship to plaintiff its products of bullion, which were to be credited to its account; 4. That at the time said

bullion was shipped, said plaintiff had advanced to said
company, upon the faith of said company's contract,
about the sum of six thousand dollars, which stood as a
charge against said company, and is yet unliquidated
and unsettled; 5. That said bullion was, in accordance
with the terms of said contract, billed, shipped, marked,
and consigned to said plaintiff, and placed in possession of
and received by Gilmer & Salisbury, common carriers
of freight and express matter, upon a contract at special
rates, to be paid at Helena, Montana, by plaintiff, upon
receipt of said bullion by it at said place; said charges
for freight to be charged to the account of said company;
6. That said bullion was to be credited to the account of
said company, upon a sale thereof by plaintiff, and that
said account was a running account; 7. That after said
bullion was so shipped and consigned to said plaintiff,
and while in possession and custody of said carriers, *en
route* to its destination, the same was attached at the suit
of Larrabie, and levied upon by his co-defendants, as
the officers charged with the execution of said process,
on the thirty-first day of May, 1879, at Deer Lodge city,
Montana; 8. That said property was at said time of the
value of three thousand dollars, and was and still is de-
tained by defendants."

On these findings, this court, at its January term,
1885, on the appeal of the present appellant, reversed
the judgment of the court below, and remanded the case
for a new trial. On the second trial in the district court,
the same findings were made as the first, with these ad-
ditional, to wit: "9. That said plaintiff had in no other
way, by purchase or otherwise, become the owner of or
acquired any interest in said property; 10. There was
an express agreement between the Northwestern Com-
pany and the plaintiff (the First National Bank of
Helena), that the bullion should be delivered to Gil-
mer & Salisbury, as agents for the bank, and that the

First National Bank of Helena was to contract with Gil-
mer & Salisbury accordingly; 11. That such contract
was made with said Gilmer & Salisbury, and the bullion
delivered to them under it, and the First National Bank
of Helena notified by mail of such delivery."

It will be observed, on an examination of this case in
5 Mont. 325, that this court decided in substance as
follows (quoting from the *syllabus*): "The transmission
of a bill of lading by the consignor to the consignee is
a delivery of the possession of the goods covered by it,
and the title to the property shipped thereby passes
from the former to the latter. But the mere shipment
of goods, in pursuance of a contract between the con-
signor and consignee, whereby the former was to pay the
freight, and the latter, after he had sold the goods, was
to credit the proceeds to the account of the consignor,
does not vest the title to the property shipped in the
consignee, in the absence of a bill of lading, or notice of
the shipment to him." *First National Bank* v. *McAn-
drews*, 5 Mont. 325.

Let us notice the points of difference in the facts of
this case as found by the court at these two trials. These
can be readily seen from findings 9, 10, and 11, made at
the second trial, in addition to the eight made at the
first trial. The ninth finding is negative in its charac-
ter, and may be noticed later on in the course of this
discussion. The tenth finding adds a new feature to the
case, in showing the express agreement between the
mining company and the bank that the bullion should
be delivered to the common carriers, Gilmer & Salis-
bury, *as the agents of the bank*, under a contract to be
made between the bank and the carriers. The eleventh
finding shows that such a contract was made between
the bank and the carriers, *and the bullion delivered to
them under it, and the bank was notified by mail of such de-
livery.* Do these additional facts, found by the court be-

low, take the case out of the range of the opinion rendered and recorded in 5 Mont. 325? That opinion proceeded on the following defects in the proof, as the case came up from the first trial: 1. No bill of lading was made and transmitted by the consignor to the consignee; 2. No notice of the shipment was given by the consignor to the consignee; 3. The advancements do not appear to have been made upon the faith of a particular consignment; 4. There was no acceptance and delivery of possession; 5. No sufficient authority appears in the carriers to accept the goods on behalf of the bank.

As to the first two defects mentioned above, it clearly appears from the opinion of the court that the proof of either would suffice, as one is, for the purpose of this case, equivalent to the other. The opinion of Chief Justice Wade, in reference to these points, uses the following pertinent language: " If a bill of lading had evidenced the intent and purpose of the consignor in shipping the bullion, or if this intent had been evidenced by any other conclusive unconditional act, such as notice of the shipment to the consignee, then a delivery to the carrier, in pursuance of such a bill of lading or notice, would have vested the title in the consignee." 5 Mont. 331. In the eleventh finding quoted above, we see that this notice was given by mail of the shipment, or rather of the delivery by the consignor, of the bullion to the carriers, under the contract constituting the carriers the agents of the bank. This certainly supplies the first and second defects in the proof pointed out by this court on the former appeal.

As to the third of those defects, it seems, by the first finding, that the mining company was, in consideration of the advancements, to ship to the bank *its products of bullion.* This was broad enough to cover this particular consignment; but if it were not, on the second trial the court found, in its tenth finding, that the bullion was

delivered to the carriers in accordance with the contract made concerning the advancements; and surely it might be said that the advancements were made on this particular consignment as well as any other, or in connection with others; and it appears from the findings that the value of this cargo was worth about one half of the money advanced. But the third defect was only incidentally alluded to in the opinion of the court on the former appeal, and it does not appear to have entered into the reversal. And it is also classed as an alternative to the first and second requisites mentioned; so that the finding of the second to exist dispenses not only with the first, but the third also. So, for these various reasons, the failure to prove that the advancements were made upon the faith of this particular consignment, and no other, would not be fatal to the plaintiff's case.

As to the fourth defect in the proof pointed out by the former chief justice, it seems, from the tenth and eleventh findings, to have been amply supplied. There was a delivery by the consignor to the carriers *as agents for the bank,* under a contract made between the bank and the carrier, in pursuance of the contract made by the mining company and the bank. A delivery to a special agent appointed to receive the goods, and a taking and carrying away by such agent, is certainly not only a delivery to the principal, but an acceptance by the principal of the goods delivered. Were it not so, there would be an end to all transactions through agents; and the maxim, *Qui facit per alium facit per se,* would never have become household words in courts of justice.

The tenth and eleventh findings also supply the fifth and last defect in the proof appearing on the former appeal; for it seems that on the second trial a specific contract was shown between the plaintiff and Gilmer & Salisbury, under which the bullion was to be delivered to them *as agents of the bank,* and it was so delivered.

If it was so delivered, it must, of course, have been accepted. The one implies the other; they are correlative terms. It seems that the plaintiff took counsel from the opinion in this case, and on the second trial conformed its proof to the requirements of this court.

As to the ninth finding quoted above, there is a seeming contradiction between it and the two following, which we must harmonize if we can. This can easily be done by reading the ninth with reference, not only to those preceding it, but also to those following it. And this is a proper method of construction; for the findings must be taken as a whole, in order to properly understand any one of them. The ninth finding would then mean that the plaintiff had not, by purchase or otherwise, become the owner of or acquired any interest in the bullion, except as pointed out in the other ten findings made by the court. This construction makes this negative finding limit all the other affirmative findings, and is equivalent to saying that they express all that was proven on the subject of the interest or ownership of the plaintiff in the property involved in this controversy. Such seems to us the only legitimate and proper construction of the language used by the trial court.

Looking at this case in the light of the former opinion of this court, and the authorities quoted and cited therein, and taking into consideration the additional facts found by the court on the second trial, and applying these facts to the principles of law announced in those authorities, we must yield to the irresistible conclusion that the court below erred in rendering judgment for the defendants, who are here respondents, on the findings of fact made herein. It is objected by the respondents, however, that the findings of fact do not support the plaintiff's case as set out in its complaint; that the plaintiff brings this action as the absolute owner; and that the findings, construed in their most favorable light, only

show a qualified ownership by the bank, in the nature of a lien for advances. · Nothing is said about the proof on the trial, and we have nothing here to show us what the proof might have been, except what may be inferred from the findings made by the court. But it is provided in our statute that "a variance between the proof on the trial and the allegations in the pleadings shall be disregarded as immaterial, unless the court be satisfied that the adverse party has been misled to his prejudice thereby. Rev. Stats., p. 180, sec. 757, div. 1. To the same effect is section 110, page 60, Revised Statutes. If, then, the variance were material, it will be disregarded, even in the trial court, unless the adverse party has been prejudiced thereby. We can see no prejudice to the respondents. Then, if we could inquire into the proofs, which are not before us, to see if there were a variance between them and the pleadings, we could not affirm this case on that ground alone. The objection should have been made in the court below, where the plaintiff could have had an opportunity to amend. The only similar objection that has ever been successfully taken for the first time in this court is where the complaint did not state facts sufficient to constitute a cause of action. Such is not the case with these pleadings. But the cause of action in this case is really as set out in the complaint, the wrongful taking and detention of the bullion described; and the findings are sufficient to justify and support a judgment rendered on this complaint. All that is necessary for the facts to show are the possession, and the right to the possession, in the plaintiff at the time of the wrongful taking by the defendants. So this objection avails nothing.

Then let us examine the case independently of the opinion rendered by this court on the former appeal, and apply the law to the facts set out in the findings, as if it were a case of first impression in this tribunal, and

see what will be the result. .The facts, as condensed
from the findings into a narrative form, would be as
follows: The First National Bank of Helena and the
Northwestern Company made an express contract,
whereby the bank was to make advances to the mining
company, in carrying on its mining operations, and in
consideration thereof the mining company would ship'
to the bank its products of bullion, which were to be
credited to its running account, upon a sale thereof be-
ing made, after payment of freight; and that the bullion
was to be delivered to Gilmer & Salisbury as agents for
the bank, and was so delivered under a contract made
by the bank with them to that effect, and the bank was
notified by mail of the delivery made to its agents; that
these five boxes of silver bullion were produced by the
Northwestern Company, and in accordance with the
contract, billed, shipped, marked, and consigned by the
mining company to the bank, and placed in the posses-
sion of the carriers, and received by them, upon a con-
tract at special rates, to be paid by the bank, and
charged to the mining company; that up to the date of
shipment the bank had advanced to the mining com-
pany six thousand dollars, and this cargo of bullion
was worth three thousand dollars; that while the bul-
lion was in possession of the carriers, under the
contract stated above, and being transported from
Philipsburg to Helena, it was attached at the suit of
Larrabie, and levied upon by McAndrews at Deer
Lodge; and the defendants hold the property under said
writ of attachment.

Under this state of facts, the title to the property
passed to the consignee, the appellant now before the
court. *Gibson* v. *Stevens,* 17 Curt. 635. And certainly
there is nothing lacking to complete the title of the
plaintiff in the bullion. The price was prepaid; the de-
livery was complete. It is true, the exact amount which

the particular shipment was to be valued at was not fixed. That remained to be determined by the price which the bank could obtain for it, after deducting the freight from Philipsburg; but this was easily ascertained, and the sale of the bullion by the bank, and the actual entry on the books of the price to the credit of the mining company, was not necessary to pass the title. Suppose the stage had been robbed in passing over the continental divide between Philipsburg and Helena, and the bullion carried off by the robbers, upon whom would the loss have to fall, — the bank or the mining company? Inasmuch as the delivery was complete, made by the mining company to the carriers under a special contract between them and the bank making them its agents to receive the bullion, and the bank was notified of this, then the property was thenceforth at the risk of the bank, and all losses in transit would have to be borne by it. A credit would have to be entered in favor of the mining company equal to the market value of the bullion, less the freight.

But it is not necessary to the reversal of this judgment that the appellant should have a perfect title to the bullion seized. If it had the possession, and the right to the possession, the seizure of the property by the respondents was wrongful, and cannot be maintained. Suppose the goods had been seized by respondents on a writ of attachment issued against some party not connected with this case, and the Northwestern Company had brought this action of claim and delivery, it could not have been maintained under the facts found by the court; for it has parted with all right to the bullion. It could not even stop it *in transitu* on the bankruptcy of the consignee. *Walsh* v. *Blakely*, 6 Mont. 199. It could not countermand the orders given to the carrier for its delivery. All it could do would be to demand that an amount of money equal to the value of the bullion, less

the freight, should be placed to the company's credit on the books of the First National Bank.

This supposed case is entirely similar to the case of *Wetzel* v. *Power*, decided by this court at its January term, 1884 (5 Mont. 214), in which it is held that "goods in the hands of a common carrier, sent by the consignor to the consignee, under an arrangement that that the consignee should receive the same, pay the freight thereon, and apply the proceeds of the sale thereof in payment of advances already made, in the ordinary course of trade, are in the constructive possession of the consignee, and he alone can maintain an action for damages for any wrongful taking of the same from the hands of the common carrier." See also Hutch. Carr., sec. 135; *Halliday* v. *Hamilton*, 11 Wall. 563; *Gibson* v. *Stevens*, 8 How. 384. Then the Northwestern Company would have been nonsuited if it had brought such a suit, just as Wetzel was in the case cited. The consignee alone could bring such an action and prevail therein. Then, certainly, the respondents here, having no better right to these goods than the attachment debtor, cannot recover on the strength of their writ and levy, when the alleged owner itself could fail.

But aside from all principles of the law applicable to common carriers, and consignors and consignees, with or without bills of lading, this case can rest on the express contracts found by the court, the fact of the advances of the money, and the delivery of the bullion to the agents of the appellant; and there is no escape from the conclusion that the respondents have no right to detain the property attached, and the plaintiff should have prevailed in this action.

The court below erred in not rendering judgment in favor of the appellant, on the findings of fact made herein; wherefore the judgment of the court below is reversed, and judgment here rendered on the findings of

the court below, for the plaintiff, the First National
Bank, against the defendants, who are the respondents
hereinbefore named, for three thousand dollars, and in-
terest from the thirty-first day of May, 1879, at the rate
of ten per cent per annum, and all costs of this court
and the court below.

                                   *Judgment reversed.*

McCONNELL, C. J., and BACH, J., concur.