[No. 14213.    [In Bank.—July 21, 1893.]

AGNES BORLAND, AS EXECUTRIX, ETC., RESPONDENT, *v.* NEVADA BANK OF SAN FRANCISCO, APPELLANT.

CORPORATIONS—PLEDGE OF STOCK—PLEDGEE NOT PERSONALLY LIABLE.—Where shares of the stock of a corporation are transferred in pledge as collateral security for the indebtedness of a stockholder, the pledgee is not to be deemed a stockholder as respects personal liability for the indebtedness of the corporation.

ID.—DEPOSIT OF STOCK WITH CREDITOR WITHOUT EXPRESS AGREEMENT—PRESUMPTION OF COLLATERAL SECURITY.—Where shares of stock of a corporation are delivered to a bank by a debtor of the bank, and the parties do not by any words or instrument attempt to define the relation which they should hold to the property so delivered, the transaction cannot be regarded as a sale or payment of the indebtedness, but the deposit of the stock will be presumed to have been intended as collateral security for the debt.

ID. — SALE — AGREED PRICE — ASSENT. — In order to constitute a sale of the shares of stock, so as to transfer title thereto, the mere transfer of possession is not sufficient, but it must affirmatively appear that a price was agreed upon, and that the parties assented that the transaction should be a sale on the one hand and a purchase on the other.

ID. — EVIDENCE — DECLARATION OF AGENT OF BANK. — The declaration of an agent of the bank made subsequently to the transfer of the stock, in which he spoke of the transaction as a "purchase," cannot be used as evidence to determine the nature of the transfer.

ID. — PAYMENT — AGREEMENT. — Payment can only result from an agreement of the parties that the transaction shall have that effect, and though payment may be made by agreement in articles other than money, yet it is only the distinct agreement of the creditor, with the consent of the debtor, to accept the thing in discharge of the debt that gives it the character of a payment.

ID. — BURDEN OF PROOF — INFERENCE OF LAW. — The burden of establishing that property, the possession of which was transferred by a debtor to his creditor, was transferred by way of sale or payment of the indebtedness, is upon the debtor, and if he fails to make such proof, the law makes the positive inference that the transfer was only as collateral security.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Lloyd & Wood, R. S. Mesick, William F. Herrin,* and *H. L. Gear,* for Appellant.

The defendant was not the owner of the stock, but only a pledgee. There not having been any agreement for a sale of the property, or for an accord and satisfaction between the parties, the delivery is presumed to be by way of collateral security for the payment of the debt. (Jones' Pledges, sec. 17; Benjamin on Sales, 4th ed., p. 8; *Leas* v. *James,* 10 Serg. & R. 315; *Perit* v. *Pittfield,* 5 Rawle, 166; *Sutphen* v. *Cushman,* 35 Ill. 186; *Bayard* v. *Shunk,* 1 Watts & S. 94; 37 Am. Dec. 441; *Hickox* v. *Lowe,* 10 Cal. 206; *Caldwell* v. *Hall,* 49 Ark. 508; 4 Am. St. Rep. 64; *Jones* v. *Fennimore,* 1 Greene, 134, 146; *Brown* v. *Olmsted,* 50 Cal. 165.)

*George W. Towle, Jr.,* and *Warren Olney,* for Respondent.

The evidence on the question as to whether the transfer was a sale or as collateral security being conflicting, the action of the trial court in finding that it was a sale will not be dis-

turbed.  (Jones on Pledges, p. 20 ; *Leas* v. *James,* 10 Serg. & R. 315.)  There was an actual transfer of the stock, and the bank thereby became vested with the title.  (Civ. Code, sec. 1083.)

HARRISON, J.—The plaintiff seeks to recover from the defendant as a stockholder in the Wyoming and Dakota Water Company its proportionate liability of certain indebtedness of that corporation to the plaintiff.  The case was tried in the court below without a jury, and judgment rendered in favor of the plaintiff, from which and an order denying a new trial the defendant has appealed.

In 1877, August Hemme, being heavily indebted, contemplated going into bankruptcy, and as the defendant was one of his creditors to the amount of several hundred thousand dollars, Mr. Flood, who was its vice-president, proposed to him that if he would turn over to the bank what property and securities he held, it would carry him through.  Hemme's indebtedness to the bank was evidenced by several promissory notes upon which he had given collateral security, and in response to this proposition of Mr. Flood he turned over to the bank various properties, upon which the bank thereafter from time to time realized by sales, and applied the amounts to his credit.  In March, 1880, Flood, having learned that Hemme had certain shares of stock in the above-named corporation which he had not turned over to the bank, sent for him, and upon his demand that this stock should be given up to the bank, Hemme caused the same to be transferred on the books of the corporation from the name of his wife into that of George B. Bailey, trustee, and delivered the certificate therefor to Flood.  Bailey was an employee in the bank, in whose name all securities held by the bank, whether as proprietor or collateral, were placed and held by him as trustee for the bank.  It does not appear that any entry of the transaction was made upon the books of the bank, and the certificates for the stock were themselves placed by one of the employees of the bank in an envelope and marked as held as security against Hemme's account.  At this time the bank still held some of the other property which had been turned over to it in 1877 undisposed of, and disposals thereof were thereafter made from time to time, and the proceeds

placed to the credit of Hemme's account. This stock, however, was never disposed of by the bank, but diminished in value so that it was regarded of no value whatever, and the notes themselves became outlawed, and in 1882 were surrendered to Hemme, at which time he made a written assignment of the stock to the bank.

It is contended by the plaintiff that the transaction between Hemme and Flood was an absolute transfer of the stock, by which the entire title thereto was vested in the bank, while the defendant contends that the stock was received and held by it only as a collateral security for the indebtedness of Hemme; and upon the determination of this disputed point hinges the liability of the defendant, for if it took the stock as security merely, it was not a stockholder, liable for the debts of the corporation, while if it became the absolute owner thereof, it is chargeable with its proportionate liability of the corporate debts. Section 322 of the Civil Code declares: "Each stockholder of a corporation is individually and personally liable for such portions of its debts and liabilities as the amount of stock or shares owned by him bears to the whole of the subscribed capital stock or shares of the corporation. . . . . The term 'stockholder,' as used in this section, shall apply not only to such persons as appear by the books of the corporation to be such, but also to every equitable owner of the stock, although the same appear on the books in the name of another. . . . . Stock held as collateral security, or by a trustee, or in any other representative capacity, does not make the holder thereof a stockholder within the meaning of this section, except in the cases above mentioned, so as to charge him with any proportion of the debts or liabilities of the corporation; but the pledgor or person or estate represented is to be deemed the stockholder as respects such liability."

The parties to the transaction under consideration did not by any words or instrument attempt to define the relation which they should hold to the property after it had been delivered by Hemme to the bank, and the evidence relating to the transaction itself is exceedingly meager. There was no express agreement of any kind between them. Their relations at the time were evidently of an unfriendly character, and they were dealing

with each other in the attitude of a creditor seeking to get from his debtor that which he had agreed to give him, and a debtor reluctantly parting with what he had agreed to give. Although Hemme, when asked at the trial whether he delivered that stock absolutely to Flood, or whether he retained an interest in it, stated that he delivered the stock absolutely to Mr. Flood as the property of the bank, he did not testify that anything of that nature was said either by Flood or himself at the time it was delivered, or at any time, and his testimony cannot be considered as anything more than either his own opinion of the transaction, or as a purpose which he then had but which he did not disclose.

The transaction cannot be regarded as a sale of the stock from Hemme to the bank. There was nothing said by either party in reference to buying or selling the same, nor was the value of the stock agreed upon or even discussed; nor was any price fixed at which Hemme would part with it or Flood accept it. Story, in his treatise on Sales, section 1, defines a sale to be "a transfer of the absolute title to property for a certain agreed price," and in section 217 of the same treatise states that the price required in a contract of sale must be: 1. Money or its negotiable representative; 2. Certain and definite, or capable of being rendered definite; 3. An actual price, seriously intended to be exacted. Section 1721 of the Civil Code defines a sale to be "a contract by which for a pecuniary consideration called a price, one transfers to another an interest in property." It is not necessary, however, that the price for which property is sold shall be money only, or that it shall be actually delivered at the time of the transaction. The term, as here used, is equivalent to compensation. (*Hudson Iron Co.* v. *Alger*, 54 N. Y. 177.) But as values are expressed in money units, a sale implies a reciprocal transfer of this compensation, past, present, or future, whose value in money is agreed upon between the parties. It is, however, the agreement to pay a price, rather than the actual payment of the price, which is the essential element of a sale, but the price itself must be definite, or the agreement must contain such elements that the price can be ascertained therefrom. In addition to the necessity for a price, there must be the assent of the parties that the transac-

tion shall be a sale. This must be an express agreement, or such an implication must follow from the nature of the transaction itself. The mere transfer of possession without the agreement, express or implied, that such transfer is a sale on the one hand and a purchase on the other, will not be a sale or have the effect to transfer the title. The testimony of Grayson that at some time subsequent to the transfer of the stock Flood spoke of the transaction as a "purchase," cannot be used to determine the nature of the transfer. Flood, as the agent of the defendant, could not bind it by any admissions or declarations respecting the character of the transaction, which he might subsequently make in reference thereto. (*Beasley* v. *San Jose Fruit Packing Co.*, 92 Cal. 388.)

Neither can the transaction be regarded as a payment by Hemme upon the amount of the indebtedness against him held by the bank. Payment, like sale, can result only from the mutual agreement of the parties that the transaction shall have that effect, and without such consent the transaction cannot be treated by the court as a payment. Technically, payment can be made only in money. It is defined in the Civil Code to be "performance of an obligation for the delivery of money only." (Sec. 1478.) Payment may, however, be made in merchandise or any commodity other than money which the parties to the transaction agree shall be accepted as payment, but the consent of the creditor to accept as payment the thing received is as essential as the purpose of the debtor that it shall have that effect. "The acceptance of any valuable thing in discharge of the debt amounts to payment, but it is the distinct agreement of the creditor to accept the thing in discharge of the debt that gives it the character of payment. Without this, the transaction is regarded either as furnishing matter of set-off or as security collateral to the original debt, according as the subject received is in possession or in action." (*Covely* v. *Fox*, 11 Pa. St. 174.) But, although the receipt of a commodity by a creditor from his debtor at an agreed valuation, with the agreement that the sale shall be applied in a credit upon the debt, is equivalent to a payment, both of these elements are wanting here. If it was the purpose of Hemme to transfer the stock in part satisfaction or in payment of his obligation to

the bank, such purpose was ineffectual without the assent of the bank.

Inasmuch as no express agreement between the parties relative to the character of the transaction, and no statement by them, or either of them, of the character in which it should be treated was shown at the trial, we are compelled to determine their rights according to the principles of law applicable to such a transaction in the absence of any agreement. In other words, we are to ascertain what legal presumption would arise from the transaction in view of the circumstances under which it was had, having reference also to the relation which the parties held to each other. If there had been no previous relations between them, the deposit of the stock would constitute a mere bailment, for there is nothing indicative of a gift, and it is not pretended that such was the intention of either of the parties. The owner of property remains such until he is divested of his ownership by law, or by his voluntary act. The mere transfer of his property to another does not divest him of his ownership, unless such was his intent, and manifested by suitable acts. If the person to whom the transfer is made is his creditor, his ownership will none the less be retained in the absence of any evidence respecting his motives in making the transfer, and even if it was his purpose to divest himself of his title thereto, or to make a transfer in satisfaction or payment of his obligation, either in whole or in part, such purpose would be ineffectual without the consent of the creditor to receive it therefor; yet, as it must be presumed that the parties to such transaction made the transfer for some purpose, and as their act is entitled to receive consideration, the transaction will be regarded as having been made in accordance with their presumed motive. The law will make the inference therefrom that by the transaction they intended to effect that which would be of mutual benefit to each without causing a loss to either, or giving to either an advantage which would not be presumed to have been within their contemplation. Hence, when a debtor deposits property with his creditor, in the absence of any showing as to the purpose with which the deposit is made or received, it is presumed that it was intended as a collateral security for the debt. Unless there is some evidence tending to show an intention on the part of the debtor to

give, and also on the part of the creditor to receive, the property in satisfaction of the debt, either in whole or in part, the law presumes that it is given only as a collateral security. Especially does this presumption arise if the property given is itself a chose in action or a security of a different nature from the debt, whose value is neither intrinsic nor apparent, and is not agreed upon by the parties, for the reason, as was said by the supreme court of Pennsylvania, in *Leas* v. *James*, 10 Serg. & R. 315: "Such assignment is not in its nature a payment. It puts no money in the hands of the creditor, but only gives him the means of collecting money from another." The duty of establishing the contrary is affirmative, and it rests upon the debtor. If he fails to perform this duty the law makes the positive inference that the assignment is only as collateral security. (Jones on Pledges, sec. 17; Colebrooke on Collateral Securities, sec. 29; *Eby* v. *Hoopes*, 1 Pennypacker, 177; *Bayard* v. *Shunk*, 1 Watts & S. 94; 37 Am. Dec. 441; *Stone* v. *Miller*, 16 Pa. St. 450; *Perit* v. *Pittfield*, 5 Rawle, 166; *Caldwell* v. *Fifield*, 24 N. J. L. 150; *Sutphen* v. *Cushman*, 35 Ill. 186; *Harris* v. *Lombard*, 60 Miss. 29.) The debtor cannot make his creditor a forced purchaser of the property or compel him to exchange his obligation for the property transferred, and this is eminently the case where no value is agreed upon, or even spoken of at the time of the transfer. The burden is always upon the debtor to show that a substituted performance of his obligation to pay money was accepted by the creditor as the equivalent of payment, or in satisfaction of the obligation. Taking the promissory note of a third party from the debtor will always be regarded as given for collateral security unless proof is made that it was given and received as payment. (*Brown* v. *Olmsted*, 50 Cal. 162.) "The mere acceptance by the creditor of a negotiable note of a third person makes it but collateral security; when such note is given for a pre-existing debt the presumption is that it was not the intention of the parties that it should operate as an immediate and absolute satisfaction and discharge of the debt, and nothing short of an actual agreement, or some evidence from which a positive inference of discharge can be made will suffice to produce such effect." (*Wilhelm* v. *Schmidt*, 84 Ill. 187.)

There is no evidence in the record herein which tends to rebut this presumption that the stock of the water company was taken and held by the defendant as collateral security for the debt of Hemme. Hemme testified that in March, 1880, when Flood sent for him and demanded the stock, he went out and brought in a certificate for twenty-four thousand shares which stood in the name of his wife, and that at Flood's request he thereupon caused it to be transferred on the books of the corporation to the name of Bailey, and then delivered the certificate to Flood; that he estimated the stock to be of the value of from two and a half to three dollars per share; that nothing was said, either by Flood or himself, about the value of the stock, or concerning the amount with which he should be credited therefor; nor was anything said as to the amount of the purchase price, or any sum fixed at which he should be allowed credit upon his account; that in June, 1880, Flood, having learned that he had four thousand other shares of stock, again sent for him and demanded this stock also; and that, after having it transferred into the name of Bailey, he brought the certificates to the bank and laid them down on the desk in front of Flood and walked out without saying anything, and that no mention was then made of money or price to be allowed him therefor. This is, in substance, all the evidence of what was said by either Flood or Hemme at the time of the transaction, and, in the absence of any statement or agreement by the parties concerning the relations thereafter to be held by them respectively to the stock, it becomes necessary to apply the foregoing principles of law to determine that relation. For this purpose it is also proper to consider the relations which Hemme and the bank held to each other, as well as any circumstances which would give to Flood a reason for demanding the stock, or to Hemme a reason for delivering it. Hemme was still heavily indebted to the bank upon the obligations for which he had given various collateral securities in 1877, many of which were still held by the bank, undisposed of. His indebtedness at that time amounted to several hundred thousand dollars, and Flood had said to him that, if he would give him what securities he had, he would carry him through. Accordingly, Hemme turned over to the bank a line of securities whose value was estimated to be nearly four hun-

dred thousand dollars, and the bank thereafter proceeded to realize upon them, but they were insufficient to meet the amount of the indebtedness.   In view of the fact that Flood's agreement with Hemme was based upon the implied promise of Hemme that he would turn over what he had, we find ample reason for Flood, when he learned that Hemme had this water stock, to demand that it should be turned over to him, and also for Hemme to comply therewith; and, even if there were no other evidence in the case, it would follow that the bank would be regarded as holding the stock in the same capacity as it held the property which was turned over to it in 1877.   There is no evidence in the record tending to show that the transfer in 1877 had any other character or effect than to operate as a collateral security for the indebtedness, and the relation of the parties at the time it was made, as well as the interview between Flood and Hemme prior thereto, and the subsequent dealings of the bank with the property, as well as the statement of some of the plaintiff's witnesses, are confirmatory of the presumption that it was held as collateral security for that debt.   The notes of Hemme, by which that indebtedness was evidenced, were retained by the bank after the transfer was made, and it does not appear that any credit was indorsed thereon, or that any amount was placed to the credit of Hemme's account, except as the various securities were realized upon from time to time.   In *Sutphen* v. *Cushman*, 35 Ill. 186, the supreme court of Illinois said: "The appellant was indebted to the appellee at the time the conveyance was made, and there is no evidence whatever of the discharge of that indebtedness.   The bond and note by which the greater portion of it was evidenced were retained by the appellee, as well as the Lighthall notes, which had been pledged as security, and the payment of the indebtedness might have been enforced at any time thereafter.   Until the contrary is shown the presumption is that the indebtedness was not satisfied by the conveyance; and absolute certainty in regard to the fact takes the place of presumption in case the creditor retains the evidences of the indebtedness, the securities pledged for its payment, and collects the money due upon such securities."   In the present case, the indebtedness of Hemme was retained upon the books of the bank as one of its assets, and the retention of

the notes by the bank, without any indorsement of payment thereon, is persuasive evidence that it was the intention of the parties that the indebtedness should remain for its full amount until it should be reduced by the application of the proceeds resulting from the sale of the securities. In the absence of any evidence tending to show an agreement to reduce the indebtedness by any fixed amount, this is the necessary presumption, for it is not to be supposed that the bank became the owner of the property turned over to it, and at the same time held the indebtedness against Hemme for its full amount; and, in the absence of any agreement regarding the amount for which the property had been accepted by the bank, there would be no means of determining that the indebtedness had been reduced in any amount. In any attempt to enforce the indebtedness against Hemme, he could have compelled the bank to first exhaust these securities before calling upon him for any deficiency, whereas, if the bank was the owner of these securities, he would have had no such right, and the bank could enforce its indebtedness for the full amount and still remain entitled to the property turned over to it by him.

We have carefully examined the record, and are satisfied that there was no evidence before the court to sustain its finding that the defendant was the owner of the stock in question; and for that reason its judgment and order denying a new trial are reversed.

McFARLAND, J., GAROUTTE, J., PATERSON, J., and DE HAVEN, J., concurred.

Rehearing denied.