(121 N. W. 766.)

---

JOHN YEGEN V. NORTHERN PACIFIC RAILWAY CO., DEFENDANT. PHILIP GILBERT, AS TRUSTEE IN BANKRUPTCY OF HENRY KREBS, A BANKRUPT, INTERVENOR AND APPELLANT.

Opinion filed April 14, 1909.

Rehearing denied May 15, 1909.

**Sales — Acts Constituting — Consignment — When Title Passes.**

1. K., a wholesale liquor and wine merchant in St. Paul, called on Y., a merchant at Bismarck, and procured him to indorse a draft for $350. Y. had previously indorsed for K. notes aggregating $500. It is not clear whether the notes were then due, or whether Y. had paid them if due. The draft was presented for acceptance in St. Paul on the 29th day of April, 1905, and accepted by K. in the name of the American Wine & Liquor Company; that being the style under which he did business. On the 2d day of May, 1905, the draft was protested for nonpayment. On the day Y. indorsed the draft, the evidence tending to show that it was after the act of indorsement, K. told Y. that, if the draft was not paid, he would turn him over some "stuff." May 1, 1905, the day before the draft was protested, K. delivered to the railway company in St. Paul five barrels of whisky addressed to Y. at Bismarck, and took a bill of lading therefor. May 2, 1905, a petition of creditors of K. was filed in the bankruptcy court in St. Paul to have him adjudicated a bankrupt, and on the same day the appellant was appointed receiver of the effects of K. He qualified on the following day, and immediately notified the railway company of the fact and that he claimed the whiskey, and to not deliver it to the consignee, but hold it subject to the order of the court. The railway company notified him, in response to this notice, that it held the whisky subject to his disposition. No price

was agreed upon or mentioned between K. and Y. The character. of the "stuff" was not indicated. Neither the bill of lading nor any notice, invoice, or communication of any kind was transmitted to the consignee, and he did not know that anything had been shipped to him until after its arrival in Bismarck, when, on his demand for the whisky being refused by the carrier, he brought this action in claim and delivery. The record does not disclose whether the whisky was sent in payment of, or as security for, a prospective indebtedness of K. to Y., or whether it was a sale.

*Held,* that the whisky at the time this action was commenced was in custodia legis.

**Bankruptcy — Claim in Delivery — Property in Custody of the Law.**

2. An action in claim and delivery in a state court will not lie to secure possession of property of which the receiver appointed by a bankruptcy court has taken either actual or constructive possession.

Appeal from District Court, Burleigh county; *Winchester,* J.

Replevin by John Yegen against the Northern Pacific Railway Company, in which action Philip Gilbert, as trustee in bankruptcy of Henry Krebs, intervened.

Judgment for plaintiff and intervenor appeals.

Reversed.

*Newton & Dullam,* for appellant.

Trustee in bankruptcy may replevy from third persons, avoid bankrupt's fraudulent transfer, and foreclose mortgages.

Bardis v. Bank, 2 N. B. N. R. 725, 3 A. B. R. 680, 178 U. S. 524; In re Gerded, 1; 2 Fed. R. 318, 4 A. B. R. 346; Hicks v. Nost, 2 N. B. N. R. 734, 178 U. S. 541, 4 A. B. R. 178; In re Cohn, 2 N. B. N. R. 299; 3 A. B. R. 421, 98 Fed. R. 75; In re Klein, 97 Fed. R. 31.

Need not secure order to sue. Chism v. Bank of Friars, 5 A. B. R. 56.

The filing of a petition in bankruptcy is a caveat to the world and in effect an attachment and injunction. Mueller v. Nugent, 184 U. S. 1, 46 L. Ed. 405; Bank v. Sherman, 101 U. S. 4; 3, 25 L. Ed. 866; In re Rogers, 60 C. C. A. 567, 125 Fed. R. 169; State Bank of Chicago, v. Cox, 143 Fed. R. 91; In re Perkin Plow Co., 50 C. C. A. 257, 112 Fed. 308; Chesapeake Shoe Co. v. Seldner, 58 C. C.

A. 261, 122 Fed. 593; Loveland's Bankruptcy (2d Ed.) 563; In re Gracewich, 115 Fed. 87; In re Breslauer, 121 Fed. R. 910; In re Granite City of Dell Rapids, S. D. 137 Fed. R. 818.

Replevin of goods in the custody of the bankruptcy courts is a wrongful use of process and contempt. In re Russell, et al, 101 Fed. R. 248; Rouse v. Letcher, 156 U. S. 47, 39 L. Ed. 341, 15 Sup. Ct. Rep. 266; Taylor v. Carryl, 20 How. 594, 15 L. Ed. 1028; Freeman v. Howe, 24 How. 450, 65 U. S. 450, 16 L. Ed. 749; Clendenning v. Red River Valley Nat. Bank, 12 N. D. 51, 94 N. W. 901; In re Schloerb, 97 Fed. R. 326; Buck v. Colbath, 3 Wall. 334, 70 U. S. 377, 18 L. Ed. 257; Krippendorf v. Hyde, 110 U. S. 276, 28 L. Ed. 145; Covell v. Heyman, 111 U. S. 176, 28 L. Ed. 390; Appleton Waterworks Co. v. Trust Co., 35 C. C. A. 302, 93 Fed. R. 286; Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Buck v. Colbath, supra; Covell v. Heyman, supra; In re Smith, 92 Fed. R. 135; J. A. E. Furniture Co., 92 Fed. R. 329; In re Brown, 91 Fed. R. 358; In re Francis-Valentine Co., 93 Fed. 953; In re Richard, 94 Fed. R. 633; Norcross v. Nathan, 99 Fed. R. 414; In re Cobb, 96 Fed. R. 821; Withers v. Stinson, 79 N. C. 341; In re Guthwillig, 34 C. C. A. 377, 92 Fed. R. 337; Davis v. Bohle, 34 C. C. A. 372, 92 Fed. R. 325; Keegan v. King, 96 Fed. R. 758; In re Endl, 99 Fed. R. 915; Carter v. Hobbs, 92 Fed. R. 594.

Any suffering of the entry of a judgment or making transfer of property, within four months before filing petition in bankruptcy, is a preference. In re Piper, 2 N. B. N. R. 7; In re Conhaim, 2 N. B. N. R. 148, 3 A. B. R. 249, 97 F. R. 923; Swarts v. Fourth National Bank of St. Louis, 117 F. R. 1, 8 A. B. R. 673; In re McLam, 97 Fed. R. 922; In re Head, et al, 114 Fed. R. 489.

Where one creditor secures an advantage over another, it is a preference. In re Griffin Pants Factory v. Nelms Racket Store Co., 2 N. B. R. 630; In re Piper, supra; In re Conhaim, supra; In re Bashline, 109 Fed. R. 965, 6 A. B. R. 194; Stern v. Louisville Trust Co., 112 Fed. R. 501, 7 A. B. R. 305.

*Mockler & Johnson,* for respondent.

To warrant stoppage intransitu, there must be insolvency and goods unpaid for. 26 Enc. Law, 1084; Bayonne Knife Co. v. Unbenhauer, 18, So. 175; Wood v. Roach, 2d Dall. 180, 1 Am. Dec.

276; Schuster v. Carson, 44 N. W. 734; Clapp Bros. & Co. v. Sohmer & Co., 7 N. W. 639; Jeffries v. Fitchburg Ry. Co., 67 N. W. 424; Walsh v. Blakely, 9 Pac. 809; Gustine v. Phillips, 38 Mich. 674.

To constitute a preference, the party preferred must know of debtor's insolvency. Moore v. Robinson, 75 S. W. 890; Brandenburg on Bankruptcy, Sec. 963; Hackney v. Raymond Bros. et al., 94 N. W. 822; Urdangen & Greenberg Bros. v. Doner, etc., 98 N. W. 317; Doxsee v. Waddick, 98 N. W. 483; Hooks & Hines v. Pafford, 78 S. W. 991; Johnson v. Anderson, 97 N. W. 343; Boundinot v. Hamann, 90 N. W. 497; Deland v. Miller & Chaney Bank, et al., 93 N. W. 304; Rosenheim v. Flanders, 86 N. W. 293; Armstrong Co. v. Elbert, 36 S. W. 139; Texas Drug Co. v. Shields, 48 S. W. 882; Tillman v. Heller, 14 S. W. 700; Drummond v. Couse, 39 Iowa, 442; Carson et al., v. Byers, 25 N. W. 826; Crawford v. Nolan, 30 N. W. 32; Chase v. Walters, 28 Iowa, 460.

Delivery to a carrier at purchaser's direction, makes the goods the property of the vendee. Krulder v. Ellison, 47 N. Y. 36; The Mary v. Susan, 1 Wheat. 25; Stanton v. Eager, 16 Pick. 467; Bailey v. Hudson Riv. R. R. Co., 49 N. Y. 70; Stafford v. Walter, 67 Ill. 83; Whiting v. Farrand, 1 Conn. 60; Ranney v. Higby, 4 Wis. 154; Schmertz v. Dwyer, 53 Pa. St. 335; Putman v. Tillotson, 13 Met. 517; Waldron v. Romaine, 22 N. Y. 368; Hunter v. Wright, 12 All. 548; Claflin v. Boston R. R. Co., 7 Allen, 341; Odell v. Boston, Me., R. R. Co., 109 Mass. 50; Johnson v. Stoddard, 100 Mass. 306; Ober v. Smith, 78 N. C. 313; Van Dusen v. Piper, 43 N. W. 684; Litchfield Bank v. Elliott, 86 N. W. 454.

SPALDING, J. This is an appeal from a judgment in favor of plaintiff in an action of replevin brought by the respondent against the Northern Pacific Railway Company, in which Philip Gilbert, as trustee in bankruptcy of Henry Krebs, a bankrupt, intervened and defended. The facts are unique. The principal points relied upon for reversal are:

(1) That, by the act of the receiver appointed by the court in giving notice to the railway company to hold the property in question subject to the further order of the court, the property was within the possession of the court, and was so being held at the time respondent undertook to obtain possession by this action.

(2) That the property in question at the time this action was commenced was in custodia legis and in the custody of the bank-

ruptcy court, and the state court could not rightly interfere by any process or take the property from the possession of any person who held it under the authority of and for the federal court.

(3)   For the reason disclosed, it is not proper for the state court to entertain this action and to decide the question as to who is entitled to the property in dispute upon the merits, as they belong exclusively to the bankruptcy court in whose possession the property was at the time it was taken by the claim and delivery process issued out of the state court.

(4)   That it is clear that Krebs at the time he undertook to consign the property in question to Yegen was insolvent within the meaning of the bankruptcy law.

(5)   That, without considering whether Yegen knew of Krebs' insolvency, the facts disclose a preference to Yegen within the meaning of the bankruptcy law, whereby he would obtain over 70 per cent. upon his claim, while other general creditors would obtain only about 17 per cent. on their claims.

(6)   That, whether or not it was necessary for Yegen to know of Krebs' insolvency or design to give Yegen a preference in order to avoid it, the facts disclosed show that Krebs was insolvent, and that the action was so clearly irregular as a business matter as to put Yegen on inquiry, and that Yegen had reasonable cause to believe that Krebs was intending to make a preference, though no reasonable cause of belief of insolvency by Yegen was necessary to avoid it.

From our views of the case it is unnecessary to consider the questions above suggested, excepting so far as they relate to the title and right to possession of the property as between the bankruptcy court and the respondent, and the effect of the determination of this question upon the jurisdiction of the state courts. As far as necessary to a determination of these questions, the facts are as follows: On the 27th day of April 1905, Krebs was a wholesale liquor and and wine merchant in St. Paul, Minn., respondent a grocer in Bismarck, N. D., and an acquaintance of Krebs. Respondent had previously indorsed notes for Krebs amounting to about $500. The evidence is not clear as to whether respondent had paid them or not, or as to whether they were due prior or subsequent to the 2d day

of May, 1905, although for the purposes of this case it may be assumed that respondent had paid them at the time the acts herein related occurred. On the 27th day of April Krebs called on respondent in Bismarck, and procured him to indorse a draft on the American Wine & Liquor Company, which was the name under which he did business in St. Paul, for $350. Krebs told respondent on that date that he would either pay the draft and the note or would turn him over some "stuff" for it. The evidence tends to show that this promise to pay or turn over "stuff" was not made until after the transaction of indorsing the draft had been completed, as Yegen testifies that it was when he left that Krebs told him this. The draft reached St. Paul and was accepted on the 29th day of April, 1905. On the 1st day of May, 1905, Krebs caused to be delivered to the Northern Pacific Railway Company in St. Paul five barrels of whisky addressed to respondent at Bismarck. On the 2d day of May, 1905, the draft was protested for nonpayment, and on the same day the American National Bank of Valley City, the First National Bank of Lidgerwood, and other creditors filed a petition in the bankruptcy court to have Krebs adjudged a bankrupt, and at the same time applied for the appointment of a receiver under the provisions of the bankruptcy law, to take immediate charge of the assets of the bankrupt. Appellant was appointed such receiver, and it was adjudged that, on qualifying as such "he shall be entitled to all of the property and effects of said Henry Krebs, and all persons in possession thereof shall deliver the same to said receiver." On the 3d day of May, 1905, Gilbert qualified as receiver, and immediately notified the railway company of his appointment and qualification and that he claimed as such receiver to be the owner of the whisky in question, and certain other whisky shipped to another party at Bismarck, on the ground that the title thereto had not passed to the consignees, as it had been shipped for the purpose of defrauding the creditors of Krebs. He also notified the company to make no delivery of said merchandise to the consignees, or to any other person, until the further order of the court. On the 8th day of May, 1905, the railway company notified Gilbert that the whisky in question was being held at destination subject to his order, and requested him to send the company the original receipt or bill of lading with order of disposition. All of the whisky was returned to appellant except the five barrels in controversy, to obtain posses-

sion of which respondent brought this action upon the refusal of the railway company to deliver to him.

About 100 other packages shipped to different parties in North and South Dakota were recovered by appellant. It appears that in the conversation between appellant and Krebs no mention was made of the nature of the "stuff" that was to be turned over in case the draft was not paid. No price or quantity was mentioned or agreed upon, and no express assent was given by respondent to the proposition. It was not suggested at the time whether it should be sent him as security or in payment of the indebtedness which might accrue. No bill of lading was sent respondent. He was not written of the shipment or in any way notified. No invoice was sent him, and he testifies that he did not know that anything had been shipped him until after it had arrived in Bismarck, which appears to have been about the 8th of May. Appellant found the bill of lading among the bankrupt's effects when he took possession, but no entry or memo showing any charge to Yegen. In due time Krebs was adjudged a bankrupt, and appellant was elected trustee to succeed himself as receiver. Under these facts was the property when this action was commenced on the 18th day of May, 1905, in the custody of the bankruptcy court, or had the title and right to possession vested in respondent? If the whisky was in custodia legis, the state courts could not interfere by an action in claim and delivery, and take it from the possession of the federal bankruptcy court. We are agreed that the title and right to possession had not vested, and that the property was in custodia legis. Respondent bases his right to possession solely on the theory that he was the owner. The elements necessary to a sale are wanting. Had an agreement been made as to the nature of the "stuff," the quantity, the price, whether it was to be received in payment or as security, if there had been an express agreement to accept it for either purpose, and respondent had been sent the bill of lading or an invoice, or had been notified of the shipment, a more difficult question would be presented, but under the facts, had no bankruptcy proceedings been instituted, Krebs could have diverted the shipment to other parties. He (Yegen) could have refused to accept it on the ground that it was was not the kind of "stuff" he supposed was coming, or dealt in, or could use; that the law of North Dakota prohibited his reselling or disposing of it; that the price was excessive; that, instead of

whisky, he expected beer, or wine, or brandy. In other words, that he did not understand the word "stuff" to mean whisky.

This transaction cannot be regarded either as a sale or as a payment, as neither can result except from a mutual agreement of the parties that the transaction shall have that effect. The presumption is, when no price or quantity is mentioned, that a shipment like this is intended as security, but the respondent bases his whole claim upon ownership. He testifies that he is the owner of the whisky. From all that appears in the record he may have regarded the transaction as a sale or a payment, while Krebs may have considered it as a deposit of security. Aside from the naked statement of Yegen that he is the owner of the property, the record contains absolutely nothing to show whether it was intended as a sale, a payment or as a deposit for purposes of security. The record discloses nothing whatever to indicate that the minds of the parties ever met on this proposition. We find corroboration of this in the fact that, under the law of this state, the sale of whisky is prohibited and made a criminal offense. Krebs had no lawful right to sell it to respondent. Borland v. Nevada Bank, 99 Cal. 89, 33 Pac. 737, 37 Am. St. Rep. 32. In fact the elements necessary to a transfer of property or of possession in respondent are wholly wanting. This court decided in Farquar v. Higham, 16 N. D. 106, 112 N. W. 557, that "an indorsement of a promissory note creates no liability of itself, and the indorser is not liable on the indorsement until presentment to the maker and notice to the indorser of such presentment." If this principle applies to drafts, the liability of respondent had not attached at the time the "stuff" was shipped, and, as we before indicated the evidence leaves his liability on the promissory note or notes in doubt. The prior conditional agreement to ship the "stuff" conferred no title upon Yegen. As was said by the court in Cayuga County National Bank v. Daniels, et al., 47 N. Y. 631: "The owner may violate his agreement, and not ship the property at all; or, if he ships, may consign it to another person. In either event no title is acquired by virtue of the unexecuted agreement to ship. If such an agreement was as in the present case made upon a good consideration, an action may be maintained for its breach by the party injured, but no title is acquired. This shows that it is not the agreement to ship that confers the title, although such agreement is based upon good consideration; but the actual shipment accompanied an unconditional consign-

ment in pursuance of such agreement which proves that the delivery to the carrier was with intent to give the consignee a right of property free from any condition whatever. The owner of the property being free to ship the property or not, and if he consign the same to one with whom he has made a prior agreement to consign the same to him or to another, it follows that, if he consign to the former, he may impose any conditions upon the consignment he choose, and that such consignee can acquire title to the property only by observing such conditions." Krebs could have notified respondent that he required him to sell this whisky, and apply the proceeds at the rate of $10, or any other sum per gallon; or he might have notified him that he desired him to hold it as security, or he could have imposed any condition, however unreasonable, upon its receipt or acceptance. The freight was not prepaid. Respondent might have refused to pay it, and he might have refused to credit the property, or its value, upon the indebtedness, and he had no right to make a credit until an agreement was arrived at between him and the consignee as to the amount of credit to be given for it. There must be an acceptance as well as a delivery. No such appropriation of the property was made as is necessary to complete a bargain and sale, and the delivery of possession to the purchaser.

The question of stoppage in transitu does not enter into the determination of this case. Benjamin on Sales, p. 855. Our views of the law are supported by ample authority. First National Bank of Helena v. McAndrews, 5 Mont. 325, 5 Pac. 879, 51 Am. Rep. 51, is directly in point. In that case the Northwestern Company was a producer of bullion. It had an express contract with the First National Bank of Helena that, in consideration of advances to be made by the bank to the company in carrying on its mining operations, it would ship to the bank its products to be credited to its account. It made a shipment of bullion at a time when indebted on account of such advances to the bank in the sum of $6,000. The bullion was shipped, marked and consigned to the bank and placed in possession of a common carrier, the freight to be paid at Helena by the bank, upon receipt of the bullion, and charged to the account of the company. The bullion was to be credited upon a sale to such account. While in possession and custody of the carriers en route to its destination it was attached at the suit of one L. against the company. The bank brought an action in claim and

delivery against the officers who levied upon the bullion.  Judgment was rendered in favor of the bank.  On appeal the judgment was reversed, and in the course of its opinion the court says: "The bullion in question having been 'billed, shipped, marked and consigned' to the respondent under and by virtue of the contract mentioned in the findings of fact by the court, and placed in the possession of the common carrier, did the possession of and property in the bullion thereby become vested in the respondent, or did such possession and property remain with the Northwestern Company until the bullion had actually been received by the respondent and credited to the account of the company?  There was no bill of lading transmitted to the bank, and no letter or notice informing it that the bullion had been shipped.  The advances by the bank had been made prior to the shipment, and the situation was as if the shipment had been made under a contract in satisfaction of antecedent advances.  We shall have to consider what effect the absence of a bill of lading and of notice of the shipment to the bank had upon the rights of these parties.  A bill of lading is a commercial instrument, and is a written acknowledgment signed by the master of a vessel or by a common carrier that he has received the goods therein described by the shipper, to be transported on the terms therein expressed to the described place of destination, and there to be delivered to the consignee or parties therein designated.  Abb. Ship. (7th Am. Ed.) 323; O'Brien v. Gilchrist, 34 Me. 558, 56 Am. Dec. 676; 1 Pars. Ship. 186; Maclachlan, Ship. 338; Emerigon, Ins. 521.  A bill of lading is a symbol of the ownership of the goods covered by it; a representative of the goods.  It is regarded as so much cotton, grain, iron, or other articles of merchandise.  The merchandise is very often sold or pledged by the transfer of the bill of lading which covers it.  Shaw v. Railroad Co., 101 U. S. 564, 565, 25 L. Ed. 892.  Hence it is held by the authorities that the transmission of a bill of lading by the consignor to the consignee is a delivery of the possession of the goods covered by it, and that thereby the title to the property passes from the consignor to the consignee.  See Haille v. Smith, 1 B. & P. 563; Desha v. Pope, 6 Ala. 690, 41 Am. Dec. 76; Gibson v. Stevens, 8 How. 384, 12 L. Ed. 1123; Grove v. Gilmore, 8 How. 429, 12 L. Ed. 1142; Bryan v. Hix, 4 Mees. & Wels. 775; Anderson v. Clark, 2 Bing. 20; Holbrook v. Wight, 24 Wend. (N. Y.) 169, 35 Am. Dec. 607; Grosvenor v. Phillips, 2 Hill (N. Y.) 147; Sumner v. Hamlet, 12

Pick. (Mass.) 76; Nesmith v. Dyeing Co., 1 Curtis 130, Fed. Cas. No. 10,124; Valle v. Cerre's Adm'r, 36 Mo. 575, 88 Am. Dec. 161. The transmission of a bill of lading amounts to the actual delivery of the possession of the property described in it, and is a compliance with the statute of frauds as to the sale and delivery of property. The contract mentioned in the findings was an executory contract, to be completed by the delivery of the bullion therein described. Knight, the cashier of the bank, testifies that the bullion was to be delivered to the bank at Helena. In the absence of a bill of lading or a letter, or notice from consignor to consignee informing him of the shipment of bullion, is the fact that the bullion in question was 'billed, shipped, marked and consigned' to the respondent such an appropriation of the property to the contract as completes a bargain and sale, and delivers the possession thereof to the purchaser? If the consignor had done some conclusive unconditional act, by which the consignee was, or was to be, informed that the bullion shipped was to be applied on the consignor's account for money advanced, then undoubtedly the delivery of the property to the common carrier, properly marked and addressed, would have been a delivery to the consignee, and an appropriation of the property to the contract. But the mere shipment of the property without notice was not such conclusive act. The shipment did not bind the consignor. He did not thereby lose his control over the property. He might have stopped it while enroute to its destination, and sent it to some other place or person. By the terms of the contract the company, the consignor, was to pay the freight, and the bullion was not to be credited to the account of the company until it had been received and sold by respondents. There was something to be done besides a delivery to respondent. 'Said bullion was to be credited to the account of the company upon a sale thereof by plaintiff.' The respondent had no right to make this credit until a sale of the bullion. When the property was sold, the proceeds belonged to the respondent. If there was to be no credit until a sale, what property passes until a sale has been made? There must be an acceptance as well as a delivery. Suppose this bullion had been 'billed, shipped and marked' at double its value, would the consignee have been bound by the valuation of the consignor? The carrier had no right to accept of the property for the consignee. The value was to be ascertained by a sale, and then, and not until then, had the consignee any right to make the credit.

*  *  *  * If there was a mere agreement to ship goods or produce to pay for advances, the property shipped would not belong to the consignee until actually received and possessed by him; but if the agreement appropriates specific property to the payment of such advances, and such appropriation is evidenced and authenticated by a bill of lading, then the title of the property passes to the consignee by a delivery thereof to the carrier." And the court proceeds: "The rule seems to be that, in order to change the title to the property shipped and vest it in the consignee, there must be a bill of lading, receipt, or letter of information forwarded to the consignee, or that the advancements were made upon the faith of the particular consignment.  *  *  * A person cannot become a purchaser without his knowledge and consent. There must be an acceptance and delivery of possession. If this were a purchase there was no acceptance of the property by the purchaser. He had never seen the property. It had never been in his possession. He did not have any notice of the shipment. He could not accept the goods even by a carrier appointed by himself.  *  *  * We do not know upon what principle a consignee or other person can be made the purchaser of property that he has never seen or accepted, and to which possession was never delivered either actually or constructively." The same doctrine is announced in Hodges & Co. v. Kimball & Farnsworth, 49 Iowa 577, 31 Am. Rep. 158. We refer to the Montana and Iowa cases for a review of the authorities on this subject. See also, Borland v. Bank, supra.

We conclude that the property from the time that the receiver gave notice to the common carrier was in the custody of the law, and that the courts of this state had no right to interfere by an action of claim and delivery. That property in the custody of the court cannot be taken by replevin process issued by another court is elementary. We find a large number of authorities holding, on somewhat similar facts, that the title had passed or the right to possession was in the consignee, but in all such cases which we have seen the decisions are based upon a delivery of a bill of lading, or its equivalent, or some other material fact, lacking in the case at bar. No question is made as to the regularity or validity of the proceedings in bankruptcy, and it is agreed that the value of the property is $600.

This conclusion makes it unnecessary to review the other questions discussed by the parties; in fact, renders it improper for us to

decide the case upon its merits as that is the province of the bank-ruptcy court.

The judgment is reversed.

All concur..

MORGAN, C. J., not particpating on account of illness.