**TRACTOR SUPPLY & OVERSEAS EXCHANGE CORP.**

v.

**ELLARD CONTRACTING CO., Inc.**

Civ. A. No. 7508.

United States District Court
N. D. Alabama, S. D.
March 16, 1954.

Harry B. Cohen, Birmingham, Ala., for plaintiff.

Memory L. Robinson and Reid B. Barnes (of Lange, Simpson, Robinson & Somerville), Birmingham, Ala., for defendant.

GROOMS, District Judge.

This is an action for breach of contract to sell plaintiff three D–8 Caterpillar tractors. Defendant moves for a summary judgment, asserting that there was no note or memorandum in writing of any contract of sale signed by it, or by any agent in its behalf, and that there

was no receipt and acceptance by the plaintiff of any part of the goods made the basis of the complaint, and that there was no giving of something in earnest to bind any contract, or in part payment and that, therefore, the alleged contract contravenes Title 57, § 10, Code of Alabama of 1940.[1]

A consideration of the affidavits of Floyd L. Jones, Margaret W. Potts, and D. W. Ellard; the deposition of Charles A. Gennaro, president of plaintiff corporation; and plaintiff's interrogatories and defendant's answers thereto, reveal a sharp conflict as to whether the negotiations of the parties finally resulted in an oral agreement.

At the outset of the negotiations, defendant submitted to the plaintiff through one Britton, a heavy machinery dealer, of Urbana, Ohio, a price list on eleven pieces of used equipment totaling $71,500.75. Included were D–8 Caterpillar tractors, 2U–7339, $7,699.65; 2U–8257, $11,000, and 2U–8309, $11,000. Defendant's evidence shows that this offer was conditioned upon the sale of all the equipment listed. Plaintiff's evidence is to the contrary.

On February 3, 1953, the Public National Bank and Trust Company, New York City, issued its Irrevocable Letter of Credit to the Bank for Savings and Trust, Birmingham, Alabama, in favor of the defendant for the account of the plaintiff.[2] Upon receipt of this letter the

[1]. The pertinent part of said section provides:

"(1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in his behalf."

[2]. "The Public National Bank And Trust Company Of New York Foreign Department
Cable Address 'Pubank'

Irrevocable Letter Of Credit

No. (4896)
Amount U. S. $25,000.00
New York, February 3, 1953
"Ellard Constructing Company, Inc.
Birmingham, Alabama
"This is a confirmation of documentary Credit Opened By Cable under today's date through Bank of Savings and Trust, Birmingham, Alabama
"It is only available for such amount as has not already been availed of under such cable advice and may not be availed of at all unless attached to and as part of our correspondent's notification of such cable advice, the two jointly constituting evidence of the outstanding amount of this credit.

Bank for Savings contacted defendant and informed the secretary to its president that the letter was in hand. The secretary, Mrs. Potts, stated that Mr. Ellard, the defendant's president, was away from the city and would not return until the following day. When Ellard returned the next day, he was informed as to the bank's call; whereupon he instructed Mrs. Potts to call the bank advising it that the defendant would not avail itself of the letter of credit and that the plaintiff was being advised by wire that it would not be used. The Bank for Savings was so advised and the wire [3] was sent. On that date the Bank for Savings returned the letter of Credit to the Public National Bank and Trust Company.

Plaintiff contends that (1) the Irrevocable Letters of Credit constituted payment and that (2) the price list was a note or memorandum, either of which would satisfy the statute of frauds.

The purchase price was not available to defendant until it loaded the tractors on railway cars and delivered the bills of lading and invoices to the Bank for Savings. Under the terms of the letter of credit defendant was without authority to draw on the New York Bank for the account of the plaintiff unless the documents referred to accompanied the draft.

■■ Money deposited with another to be paid over on a delivery of the goods contracted for does not constitute payment within the meaning of the statute. Leonard v. Roth, 164 Mich. 646, 130 N.W. 208. There must be an actual transfer or delivery of the property or money agreed to be given as payment. The mere tender of payment, if unaccepted by the seller, is not sufficient. 49 Am.Jur. Sec. 265, p. 583.

On the issue of payment, the situation presented in Sousa v. First California Co., 101 Cal.App.2d 533, 225 P.2d 955, 959, is analogous to that here presented. In that case there was an oral contract to purchase corporate stock. The purchaser deposited a check with a third party with the understanding that the check would be delivered to the seller if and when the agreement was reduced to writing and signed by the parties. Before a draft of the contract was submitted to him the purchaser withdrew

"Gentlemen:
"We hereby authorize you to draw on The Public National Bank & Trust Company of New York, 37 Broad Street, New York, for account of Tractor Supply and Overseas Exchange Corp., Wallington, New Jersey, up to an aggregate amount of Twenty-Five Thousand United States Dollars, available by your drafts at sight, 100% Invoice Value, accompanied by railroad bills of lading issued to order blank endorsed. Commercial Invoice in duplicate.

"Covering Shipment of: 3 D–8 Tractors Serial No. 2U 8309 at $9,000, Serial No. 2U 8257 at $8,000, Serial No. 2U 7339 at $8,000 from FOB shipping point to Passaic, New Jersey. Partial shipments permitted. Insurance to be effected by railroad as common carrier. Drafts must be drawn and negotiated on or before February 10, 1953. Each draft must bear the clause: 'Drawn under Letter of Credit of The Public National Bank and Trust Company of New York, N. Y., No. 4896 dated February 3, 1953,' and the amount endorsed on this letter of credit. The negotiating bank must forward by first mail direct to The Public National Bank and Trust Company of New York, N. Y.,
All Documents Must Accompany Drafts.
"We hereby agree with the endorsers, drawers and bona fide holders of all drafts drawn under and in compliance with the terms of this credit that such drafts will be duly honored upon presentation and delivery of documents as specified to the drawee.
"Yours very truly,
Vice President
Manager Foreign Department
/S/ JHC Assistant Cashier
Asst. Mgr. Foreign Department."

3. "Western Union
1953 Feb 6 PM 3 07
(44)
PA414 NSA 321
NS.BMA495 PD–Birmingham Ala 6 130
P –
Charles Genneard–
19 Patterson Ave Wallington NJER We Are Not Accepting Your Offer For Equipment Have Instructed Bank To Return Your Letter Of Credit
–Ellard Contracting Co–"

from the transaction. In holding that the delivery of the check was not part payment within the statute, the court said:

"Can it be said that there was part payment which took the oral contract out of the statute notwithstanding the fact that no title to the check or to anything else passed to plaintiff? Payment is the performance of an obligation for the delivery of money, § 1478, Civil Code. The performance may take place by the delivery and acceptance of other things of value instead of money, but there is only payment when the money or other things of value are given and accepted in discharge of the obligation in whole or in part. Borland v. Nevada Bank, 99 Cal. 89, 95–96, 33 P. 737; Low v. Warden, 77 Cal. 94, 99, 19 P. 235."

In Anchor Trading Corporation v. Joseph T. Ryerson & Sons, 272 App.Div. 170, 69 N.Y.S.2d 844, affirmed 297 N.Y. 817, 78 N.E.2d 611, the appellant unsuccessfully urged that an irrevocable letter of credit reciting provisions of an alleged oral contract of sale was sufficient to take the contract out of the statute. No action was taken under the letter of credit. It was received by the defendant in the mail and remained in its files for three weeks, at the end of which it was returned unaccepted to the bank. A letter of credit was also involved in Clinton Paper Co. v. Mills Paper Co., Inc., Sup., 83 N.Y.S.2d 875. The Anchor case was followed. Other cases sustaining the defendant's contention are Orr v. Hall, 75 Neb. 548, 106 N.W. 656 and Howe v. Hayward, 108 Mass. 54.

■ The unaccepted letter of credit did not constitute payment.

■■ In approaching the answer to the second question, it is well to keep in mind the purpose of the statute of frauds. Its direct purpose is to prevent fraud and perjury with respect to the agreements governed thereby by requiring for their enforcement the more reliable evidence of some note or memorandum in writing signed by the party to be charged, or his agent in his behalf. An agreement of which there is some note or memorandum in writing is less likely to become cause for controversy. If the statute is to have effect according to its purpose, the note or memorandum must of necessity recite the essential terms of the oral agreement. No essential term should rest in parol. All such should appear upon the face of the writing. Wagner-White Company v. Holland Cooperative Ass'n, 222 Mich. 58, 192 N.W. 552; Webster v. Condon, 248 Mass. 269, 142 N.E. 777.

■ The total price of the three tractors as it appears on the price list is $29,699.65. The complaint avers that the purchase price was $25,000. The letter of credit was in the latter amount. The price to be paid is an essential element of the note or memorandum required by the statute. Howell v. Elk Hill Butter Co., D.C.Pa., 294 F. 539; 37 C.J.S., Frauds, Statute of, § 195. In Helms Construction & Trading Corp. v. Steiner, Sup., 80 N.Y.S.2d 865, where the complaint alleged that a contract for the sale of tractors fixed a price of $12,500 per tractor and a letter relied on as constituting a "written memorandum" did not mention any such price, it was held that such letter was not sufficient. A written offer or order which is not accepted does not comply with the statute.

"Even where oral modifications of a written offer or acceptance are agreed to by the other party, the contract, being partly in parol, is deemed to be an oral contract and insufficient under the statute." 37 C.J.S., Frauds, Statute of, § 180.

"* * * where a written offer is made by a vendor and rejected by a counter proposition from the vendee, a subsequent oral agreement by the vendor to deal on the basis of the rejected offer cannot bind him, since the written offer, for the purpose of satisfying the statute, is ended by the rejection." 49 Am.Jur. sec. 335, p. 647.

It is undisputed that the parties did not agree on the price for the three trac-

818

tors in the amounts stated on the price list. There is a total difference of $4,699.65 between the prices appearing on the list and the prices for which plaintiff claims the tractors were purchased. Where the note or memorandum reveals that the price is to be determined apart from the note or memorandum, price might cease to be an essential element of the note or memorandum required by the statute. But such is not this case.

This is not a case of the modification of an existing written contract by a subsequent parol agreement. No oral agreement was concluded on the basis of the prices appearing on the list; consequently, there was no written contract in existence subject to modification.

 Under the facts of this case, the price list is not a note or memorandum in writing sufficient to satisfy the statute.

The motion for summary judgment is due to be granted.